594 So.2d 802 (1992)
James Walter TODD, Appellant,
v.
STATE of Florida, Appellee.
No. 90-2519.
District Court of Appeal of Florida, Fifth District.
January 31, 1992.
Rehearing Denied March 10, 1992.
James B. Gibson, Public Defender, and Daniel J. Schafer, Asst. Public Defender, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Belle B. Turner, Asst. Atty. Gen., Daytona Beach, for appellee.
*803 GRIFFIN, Judge.
On March 18, 1990, appellant entered the Lighthouse Church and stole $110 from the collection plate. The theft was witnessed by several members of the congregation, one of whom, Richard Voegltin, took off in his car in pursuit of appellant. During the pursuit, Mr. Voegltin, who had a preexisting heart condition, began to experience cardiac dysrhythmia. He lost control of his vehicle, collided with a tree at low speed and died of cardiac arrest.
The state charged appellant with manslaughter, alleging that he caused the death of Mr. Voegltin by committing the misdemeanor offense of petty theft which caused Voegltin to pursue him in order to recover the stolen property. Appellant filed a motion to dismiss, asserting that, because it cannot be said with any reasonable degree of medical certainty that Mr. Voegltin died as a result of chasing appellant, because Mr. Voegltin was at high risk of having a heart attack due to his preexisting medical condition, and because the appellant had no knowledge of this preexisting medical condition, the manslaughter charge should be dismissed.[1] The trial court denied the motion to dismiss. We reverse.
The issue, as presented to us, is whether Florida recognizes the misdemeanor manslaughter rule. Reduced to basics, the misdemeanor manslaughter rule is that an unintended homicide which occurs during the commission of an unlawful act not amounting to a felony constitutes the crime of involuntary manslaughter. It is sometimes referred to more broadly as "unlawful act manslaughter." The only express mention of the misdemeanor manslaughter rule that either party has cited in Florida case law is a passing reference in a footnote of an opinion of the Third District Court of Appeal, Rodriguez v. State, 443 So.2d 286, 290 n. 8 (Fla. 3d DCA 1983).
The misdemeanor manslaughter rule has been the subject of surprisingly little analysis, although in their Handbook on Criminal Law, LaFave and Scott have included a detailed discussion and critique of this theory of criminal responsibility. They suggest that "[t]he trend today, barely underway, is to abolish altogether this type of involuntary manslaughter... ."[2] The authors posit that to punish as homicide the result of an unlawful act that is unintended and produced without any consciousness of the risk of producing it is "too harsh" and "illogical". W. LaFave and H. Scott, supra at 602.[3]
One of the few secondary sources cited by LaFave and Scott on this topic is a 1939 law review article by I. Wilner entitled Unintentional Homicide In the Commission of an Unlawful Act.[4] In this article the author argues that the principal historic purpose of this rule was not, in fact, punishment of the homicide but vigorous punishment of the underlying "unlawful act", which in most cases was a violation of some property right.
Because of the facial simplicity of the misdemeanor manslaughter rule, its application by courts has led to some rather extraordinary findings of criminal liability for homicide. For example, a Texas court found liability for manslaughter on the following facts: The victim discovered the defendant committing adultery with the victim's wife. Adultery was a misdemeanor in Texas. The victim made a murderous attack on the defendant. In defending himself against the murderous attack, the defendant killed the victim. The court decided that since the victim's murderous attack was a foreseeable reaction to the defendant's criminal misconduct, the defendant was guilty of manslaughter. Reed v. *804 State, 11 Tex. Ct. App. 509 (1882), discussed in Wilner, supra, at 834-835. In Commonwealth v. Mink, 123 Mass. 422, 425, 25 Am.R. 109 (1877), the defendant was attempting to commit suicide, but her fiancee intervened to try to stop her and was accidentally killed by the defendant. Because suicide was an unlawful act malum in se, the court found defendant guilty of manslaughter.
Over time, this theory of criminal responsibility has developed many complexities. Courts differ about whether the unlawful act must amount to a criminal offense and whether different standards should apply for malum in se or malum prohibitum offenses. In this case, neither of these issues is of concern. The offense in this case is a malum in se misdemeanor offense under the criminal law of Florida. However, the other principal point of divergence in the development of the misdemeanor manslaughter rule  the issue of causation  is critical to this case.
The views on the requirement of causation in unlawful act manslaughter differ widely among the various jurisdictions. In some instances, no causal relationship at all has been required. At the other extreme is the requirement that there be not only a direct causal relationship between the unlawful act and the death, but that the death must be a natural and probable consequence of the offense. An example cited by Wilner is the case of Votre v. State, 192 Ind. 684, 138 N.E. 257 (1923) where, contrary to statute, the defendant gave whiskey to the victim, who was a minor. Consumption of the alcohol caused the victim to suffer a heart attack of which he died. The Indiana court held that the defendant was not guilty of manslaughter because the homicide must follow both as a part of the perpetration of the unlawful act and as a natural and probable consequence of it. Wilner, supra at 836. As LaFave and Scott and Wilner point out, application of this view of causation essentially converts the unlawful act type of manslaughter into culpable negligence manslaughter  a development which these commentators applaud.
In 1989 an article published in the Solicitor's Journal entitled "Unlawfully Occasioning Another's Death Without Physical Contact"[5] catalogued the modern English decisions dealing with this issue. From the article, it appears that the law of manslaughter by unlawful act has developed in England along lines similar to the American experience. The author reports, however, that beginning in the mid-1960's English courts began to require that, in order to support a manslaughter conviction, the unlawful act must be such that "all sober and reasonable people would inevitably recognize it as an act which would subject the other person to at least the risk of some harm resulting therefrom, albeit not serious harm." Bentil, supra at 1250 (quoting R. v. Church [1966] 1 Q.B. 59, CCA).[6] Evidently, English courts have concluded that requiring an element of dangerousness in the unlawful act supplies the element of blameworthiness appropriate for conviction of a homicide crime.[7]
Florida courts, by simply interpreting the statutory definition of manslaughter ("[t]he killing of a human being by the act, procurement, or culpable negligence of another, without lawful justification ..."), appear always to have understood the importance of causation as an element of this type of homicide. Our courts also have appreciated the foreseeability element of causation.[8] In Tipton v. State, 97 So.2d 277 (Fla. 1957), the defendants had gotten into an argument with a gas station attendant about whether he would cash a check for them. They either pushed or touched him in a threatening way. The attendant *805 fell to the floor and died of a heart attack. The supreme court, reversing convictions for manslaughter observed:
Consideration of the act and its surroundings at the time of its commission, not of the results alone, should determine criminal responsibility for manslaughter under the Florida homicide statute. It is necessary for the act to result in the death of a human being under the definition of homicide; but this does not relieve the courts of the duty to study the act itself to determine whether the punishment for manslaughter should be applied. This conclusion does not require the use of the shibboleths, malum prohibitum and malum per se. The statute itself provides far surer guideposts.
Id. at 281. The Tipton court concluded that an instruction on excusable homicide should have been given and that the lack of proof of a causal connection between the alleged "pushing, shoving and ill treatment" and the death of the deceased precluded a conviction for manslaughter.
In Phillips v. State, 289 So.2d 447 (Fla. 2d DCA), cert. denied, 294 So.2d 662 (Fla. 1974), the defendant, who was under the influence of LSD, forced his way into a private home, began acting in a very bizarre manner and assaulted the elderly couple who resided there. The husband, who was 62 years old and had a chronic heart condition, was attempting to pull the defendant away from his wife when he collapsed into a chair and died of a heart attack. The Second District Court found that the issue of causation on these facts was a jury question because it was foreseeable that the assaults, coupled with the bizarre conduct, would have a traumatic effect on the victims and could result in physical harm.
In 1989 the First District Court of Appeal had occasion to consider a case, Penton v. State, 548 So.2d 273 (Fla. 1st DCA), rev. denied, 554 So.2d 1169 (Fla. 1989), which was in many ways similar to the case that we have under review here. There the appellant and a codefendant burglarized the garage of a private residence, stealing two bicycles. The homeowner, alerted to the burglary by barking dogs and shouts from his son that someone was stealing his bike, ran out of the house. After chasing appellant approximately twenty-five to thirty feet, the homeowner fell dead in the middle of the street, his death apparently caused by a release of fat emboli into his blood stream. The defendant was charged under the felony murder rule but was convicted by the jury of manslaughter.
The question presented to the First District Court was whether the evidence was sufficient to support a manslaughter conviction. The Penton court focused on the issue of causation, concluding initially that, under Florida law, the "two affirmative elements of manslaughter [are]: (1) the killing, and (2) the causative link between the death and the act, procurement or culpable negligence of the defendant." Id. at 274. The court held that there had to be a showing by the state that the defendant actually performed some affirmative act that caused the death to occur.[9] The First District also observed:
Because the consequences of a determination of guilt in a criminal case are far more severe than the consequences suffered by a defendant in a tort action, we conclude that a closer relationship between the result effected and that intended or hazarded is required.
Id. at 275 (citation omitted). If it is true that imposition of criminal responsibility for death requires a causative link at least equivalent to that required for tort liability, the analysis of this case is considerably simplified. Under Florida law, in a tort context, appellant's petty theft may have been a cause-in-fact of the victim's heart attack, but it was not the legal cause. Winn-Dixie Stores, Inc. v. General Motors Corp., 553 So.2d 1246 (Fla. 3d DCA 1989). See also Cone v. Inter County Tel. & Tel. Co., 40 So.2d 148 (Fla. 1949); Stahl *806 v. Metro Dade Co., 438 So.2d 14, 19-21 (Fla. 3d DCA 1983).
In this case, even if it were assumed that the stress of pursuit brought on the heart attack, it cannot be said that the petty theft was the legal cause of Mr. Voegltin's death. The crime itself was a minor property offense. There is no suggestion of any touching or any threat to anyone's person. This is not even a case, like a purse snatching, where violence was necessary to produce the theft. Nor is it asserted that Mr. Voegltin died from fright or horror at witnessing the crime. The state's traverse specifically asserts that it was the pursuit that caused the fatal heart attack. Although the petty theft did trigger a series of events that concluded in the death of Mr. Voegltin and was, in that sense, a "cause" of the death, the petty theft did not encompass the kind of direct, foreseeable risk of physical harm that would support a conviction of manslaughter. The relationship between the unlawful act committed (petty theft) and the result effected (death by heart attack during pursuit in an automobile) does not meet the test of causation historically or currently required in Florida for conviction of manslaughter.
REVERSED.
COBB and HARRIS, JJ., concur.
NOTES
[1] Appellant pled guilty to the manslaughter offense under a plea agreement, reserving the right to appeal the denial of his motion to dismiss.
[2] W. LaFave and A. Scott, Handbook of Criminal Law 594 (1972). See also 2 Wharton's Criminal Law § 167 (14th ed. 1979).
[3] See also Annotation, Homicide by Fright or Shock, 47 A.L.R.2d 215 (1980).
[4] Wilner, Unintentional Homicide In The Commission of An Unlawful Act, 87 U.Pa.L.Rev. 811 (1939).
[5] J. Kwodo Bentil, Unlawfully Occasioning Another's Death Without Physical Contact, 133 Sol.J. 1250 (1989).
[6] The author also cites R. v. Cole [1981] 61 CCC(2d) 119, 127, for the proposition that Canada has adopted by case law the same "dangerousness" requirement.
[7] Bentil, supra at 1251.
[8] This may account for the dearth of reference to the "misdemeanor manslaughter rule" in Florida case law.
[9] In Penton, the focus was on the medical testimony that a release of fat emboli can be brought on by stress but that it was impossible to establish that the victim's death was caused by the stress of pursuit. Because of the procedural posture of this case, our problem is different.