LEWIS, J.
Appellant, Albert Tyus, appeals from his conviction for manslaughter. Appellant contends that his act of burglarizing an elderly woman’s residence did not constitute the legal cause of the resident’s death by fatal cardiac dysrhythmia and that the trial court therefore erred in denying his Motion for Judgment of Acquittal. Because the State presented legally sufficient evidence during the trial to support each element of manslaughter, including the legal causation element, we affirm appellant’s conviction for manslaughter. We affirm as to appellant’s second issue on appeal without further discussion.
On February 6, 2001, appellant walked to the front of the residence of an elderly woman (“victim”), picked up a chair from the front porch, and broke the window panes in the front door. Upon breaking the glass, appellant saw the victim fall as *320 she was walking towards her back door and heard her scream. Appellant proceeded through the front door, walked to the victim’s purse, and took twenty-five dollars and the victim’s car keys from inside the purse. Appellant then drove to a separate residence to purchase crack cocaine. Thereafter, appellant returned the victim’s vehicle to her garage, walked through the back door of the residence, placed the keys back into the victim’s purse, and tried to revive the victim to no avail.
After matching the DNA profile of the blood found on the front door curtains and inside the vehicle to that of appellant’s DNA profile and after obtaining appellant’s confession, the State charged appellant with first-degree felony murder, burglary of a dwelling, and grand theft of a motor vehicle. Appellant pled not guilty as to the felony-murder and grand theft counts and nolo contendere as to the burglary count. During the trial, the victim’s internist opined that the victim died of an arrhythmia related to heart disease. According to the internist, the stress and excitement brought on by being surprised by an intruder could have caused the condition. The forensic pathologist who conducted the victim’s autopsy opined that the cause of the victim’s death was atheros-clerotic and hypertensive heart disease with the contributing factor of stress due to a burglary that caused a fatal cardiac dysrhythmia. The pathologist further testified that the manner of the victim’s death was a homicide; the victim suffered from a natural condition aggravated by stresses that were due to an unnatural event, the burglary, which led to an unnatural death.
After the State rested its case, appellant moved for a judgment of acquittal as to the felony murder and grand theft counts. Appellant also asserted that the State had not proven the elements of second-degree murder or manslaughter, two lesser included offenses of first-degree felony murder. The trial court denied appellant’s motion. After electing not to call any witnesses, appellant timely renewed his motion, which the trial court again denied. Following jury deliberations, the jury found appellant guilty of manslaughter and grand theft. The trial court sentenced appellant to consecutive sentences of fifteen years on the manslaughter and burglary counts and five years on the grand theft count. This appeal followed.
Appellant asserts that the trial court erred in denying his Motion for Judgment of Acquittal as the State did not present legally sufficient evidence to prove that appellant’s act of burglarizing the victim’s home constituted the legal cause of the victim’s death. We review a trial court’s ruling on a motion for judgment of acquittal de novo. See State v. Williams, 742 So.2d 509, 511 (Fla. 1st DCA 1999). In reviewing an order denying a motion for judgment of acquittal, we must consider the evidence and all reasonable inferences therefrom in a light most favorable to the State. See Jones v. State, 790 So.2d 1194, 1197 (Fla. 1st DCA 2001) (citations omitted). If the State has presented evidence to support every element of a crime, then a motion for judgment of acquittal must be denied and affirmed on appeal. Williams, 742 So.2d at 511 (citations omitted).
The Legislature has defined the crime of manslaughter as:
The killing of a human being by the act, procurement, or culpable negligence of another, without lawful justification according to the provisions of chapter 776 and in cases in which such killing shall not be excusable homicide or murder, according to the provisions of this chapter, is manslaughter, a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
*321 § 782.07(1), Fla. Stat. (2000). The two affirmative elements of manslaughter are the killing and a causative link between the death and the act, procurement, or culpable negligence of the defendant. Penton v. State, 548 So.2d 273, 274 (Fla. 1st DCA 1989) (citing Cunningham v. State, 385 So.2d 721, 722 (Fla. 3d DCA 1980)). In addition to establishing causation in fact, the State must prove that the defendant’s conduct was the legal or proximate cause of the harm at issue. Eversley v. State, 748 So.2d 963, 966 (Fla.1999). The two questions that must be considered in establishing legal causation are: (1) whether the prohibited result of the defendant’s conduct is beyond the scope of any fair assessment of the danger created by the defendant’s conduct and (2) whether it would be otherwise unjust, based on fairness and policy considerations, to hold the defendant criminally responsible for the prohibited result. Id. Expert medical testimony as to the likelihood or probability of a causal connection between the defendant’s act and the victim’s death is generally sufficient to establish causation. Penton, 548 So.2d at 274.
Here, we agree with the trial court that the evidence was legally sufficient to establish a jury question as to legal causation. See Phillips v. State, 289 So.2d 447, 449 (Fla. 2d DCA 1974). In doing so, we note that courts in other jurisdictions have recognized that, under circumstances similar to the instant case, the causal relationship between the defendant’s felonious criminal conduct and the victim’s fatal heart attack was not too remote to form a basis for legal causation and, thus, criminal responsibility. For instance, in State v. Losey, 23 Ohio App.3d 93, 491 N.E.2d 379, 380 (1985), the appellant was convicted of involuntary manslaughter[1] and aggravated burglary after he forcibly opened the elderly victim’s front door at 11:00 p.m., after receiving no response from knocking, and attempted to'remove a bicycle. Upon hearing an approaching vehicle, the appellant placed the bicycle beside the front door and departed, leaving the front door open. Id. Both the victim and her son proceeded to the living room and noticed the open front door. Id. The victim subsequently collapsed and later died of an acute coronary thrombosis precipitated by the appellant’s act of burglarizing the victim’s residence. Id. at 383. In affirming the judgment, the Ohio Tenth District Court of Appeals concluded that the causal relationship between the appellant’s criminal conduct and the victim’s death was not too improbable, remote, or speculative to form a basis for criminal responsibility. Id.; see also State v. Spates, 176 Conn. 227, 405 A.2d 656, 660 (1978) (finding no error in the trial court’s instruction on the meaning of proximate cause and disagreeing with the appellant that the victim’s heart attack, which was caused by the stress of the appellant’s act of burglarizing the victim’s home, could not, as a matter of law, be found to have caused the victim’s death).[2]
*322 As in Losey, we conclude that the relationship between appellant’s criminal conduct and the victim’s death was not too improbable, remote, or speculative to form a basis for criminal responsibility. In doing so, we distinguish this Court’s previous decision in Penton and the Fifth District’s decision in Todd v. State, 594 So.2d 802 (Fla. 5th DCA 1992). In both of these cases, the victims suffered an unintended death after pursuing the defendants who had been engaged in an unlawful act, while in the instant case, the victim suffered an unintended death, not as a result of pursuing appellant as he burglarized her residence, but as a result of the stress caused by the fright or horror at witnessing appellant’s unlawful conduct.
In Penton, this Court, in holding that the evidence presented was insufficient to establish the causation element, noted the equivocal nature of the doctor’s testimony, in which the doctor testified that the case was complex because the victim did not have any one condition that he could say within reasonable medical certainty was the cause of the death. 548 So.2d at 274. Similarly, in Todd, the Fifth District held that it could not be said that the appellant’s petty theft was the legal cause of the victim’s death. 594 So.2d at 806. There, the State’s traverse specifically asserted that it was the pursuit that caused the victim’s fatal heart attack. Id. The Fifth District noted that the case was not one in which it had been asserted that the victim died from fright or horror at witnessing the crime. Id.
In contrast to Penton, here, there was nothing equivocal about the expert medical testimony. Moreover, unlike the assertions made in Todd, in the instant case, the State contended, and the expert witnesses so testified, that the victim’s cardiac condition was brought about by appellant’s unlawful activity. As such, we find both Penton and Todd to be distinguishable from the facts of this case.
Furthermore, it is not unjust in the instant case to hold appellant criminally liable for the victim’s death. Cf. Hodges v. State, 661 So.2d 107, 110 (Fla. 3d DCA 1995) (reversing the trial court’s denial of the appellant’s motion for judgment of acquittal as it would be fundamentally unfair to impose criminal responsibility upon the appellant for the independent, irresponsible acts of another); Velazquez v. State, 561 So.2d 347, 354 (Fla. 3d DCA 1990) (holding that it was unfair, unjust, and just plain wrong to say that the appellant was criminally responsible for the victim’s death as no one forced the victim to participate in the fatal drag race). Unlike Hodges, in the instant case, the victim’s death was not caused by the independent, irresponsible acts of anyone other than appellant. Nor did the victim choose to place herself in a dangerous situation as did the victim in Velazquez. Therefore, because the State presented legally sufficient evidence to support every element of the crime of manslaughter, the trial court did not err in denying appellant’s Motion for Judgment of Acquittal. Accordingly, we affirm appellant’s conviction for manslaughter.
AFFIRMED.
VAN NORTWICK and HAWKES, JJ., CONCUR.

. At the time of the offense, involuntary manslaughter was defined as:
(A) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit a felony-
(B) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit a misdemeanor.
(C)Whoever violates this section is guilty of involuntary manslaughter.
Ohio Rev.Code Ann. § 2903.04.

. At the time of the offense, a person was guilty of manslaughter in the first degree when “under circumstances evincing an extreme indifference to human life, he recklessly engage[d] in conduct which create[d] a grave risk of death to another person, and thereby *322 cause[d] the death of another person.” Conn. Gen.Stat. § 53a-55(a)(3).