859 So.2d 1282 (2003)
John M. BYERS, as Personal Representative of the Estate of John M. Byers, Jr., deceased, Appellant,
v.
David RITZ and Paul Barcinas, Appellees.
No. 3D01-3585.
District Court of Appeal of Florida, Third District.
November 26, 2003.
*1283 Eversole & Rudd, P.A.; Albert Gordon; Hersch & Talisman, P.A., and Patrice Talisman, for appellant.
Lane, Reese, Aulick, Summers & Field and Paul Field; David K. Markarian, for appellees.
Before GODERICH, GREEN, and RAMIREZ, JJ.
GODERICH, Judge.
The plaintiff, John M. Byers etc. [the Estate], appeals from a final judgment in favor of the defendants, David Ritz and Paul Barcinas, in a wrongful death action. *1284 The defendants cross-appeal, in part, from the denial of their motion for summary judgment on the issue of worker's compensation immunity. We reverse and remand for a new trial consistent with this opinion.
John M. Byers, Jr. [Officer Byers] died as a result of an accident that occurred on Ocean Reef the day after Hurricane Andrew. The accident occurred when a backhoe, which was taken without permission, was being used to push a tree. The Estate filed a wrongful death action against Officer Byers' supervisors, Ritz and Barcinas, based on the "criminal acts" exception to worker's compensation immunity. § 440.11(1), Fla. Stat. (1991).[1] Following discovery, the trial court granted partial summary judgment in favor of the Estate finding that "the use and taking of the backhoe constituted a violation of law for which the maximum penalty exceeds sixty days." The trial court, however, did not make any findings as to who committed the theft. The defendants defended the action, in part, by claiming that there was no theft of the backhoe because its taking was justified by the emergency present at the time.
At trial, the evidence showed that Ritz was the community administrator of the Ocean Reef Community Association [ORCA]. Two of ORCA's departments were the Ocean Reef Public Safety Department and the Ocean Reef Volunteer Fire Department [collectively referred to as Departments]. Barcinas was the captain of the Departments, and Byers was an officer of the Departments. The day after Hurricane Andrew, Officer Byers and his co-workers were manually clearing debris and trees. Officer Delgado, one of Officer Byers' co-workers, saw a backhoe that was owned by a construction company at a local gas station. Officer Delgado testified that he went back to the command center to share this information with Ritz, Barcinas, and others. The consensus of the group, including Ritz and Barcinas, was that using this backhoe was a good idea. Officer Delgado then went back to the gas station and hot-wired the backhoe without attempting to contact the owner because there was no phone service. Officer Delgado used the backhoe to clear debris at the Public Safety Building. Several of Officer Byers' co-workers testified that Ritz and Barcinas either gave instruction to Officer Delgado regarding the use of the backhoe or saw Delgado operate the backhoe. Later that day, as instructed, Officers Delgado and Byers went to Sunset Cay to remove a large tree that had fallen across the road. While they were removing the tree, the fatal accident occurred.
At trial, Ritz testified that he did not remember one way or the other whether he had talked to Delgado regarding the backhoe. Barcinas, however, testified that he did not authorize the use of the backhoe.
The Estate requested that the jury be given the following jury instruction on theft which is derived directly from the Florida Standard Jury Instructions (Criminal):
A theft is committed when a person knowingly obtains or uses the property *1285 of another with the intent to either temporarily or permanently appropriate the property to his own use or to the use of any person or entity not entitled to it. "Obtains or uses" means any manner of taking or exercising control over the property or making any unauthorized use, disposition or transfer of the property.
The trial court, however, refused to give the last sentence of the instruction defining the term "obtains or uses." The trial court, over the Estate's objection, also instructed the jury on the defense of necessity, after denying the defendants' motion for directed verdict on that defense.
The jury found that neither defendant was guilty of theft, and therefore, did not answer the remaining questions on the verdict form. Thereafter, the Estate's motion for new trial was denied. This appeal and cross appeal followed.
First, we agree with the Estate that the trial court committed reversible error by not instructing the jury with the complete instruction on criminal theft where the requested instruction contained an accurate statement of the law, the facts in the case supported the giving of the complete instruction, and the instruction, as requested, was necessary for the jury to properly resolve the issues in this case. L.K. v. Water's Edge Ass'n, 532 So.2d 1097, 1098 (Fla. 3d DCA 1988).
On cross appeal, the defendants contend that the trial court erred by denying their motion for summary judgment on the issue of worker's compensation immunity. We disagree.
Specifically, the defendants contend that the "criminal acts" exception to worker's compensation immunity is not applicable in the instant case. Pursuant to section 440.11(1), Florida Statutes (1991), the "criminal acts" exception is applicable when "the conduct which caused the alleged injury arose within the course and scope of said managerial or policymaking duties and was not a violation of a law, whether or not a violation was charged, for which the maximum penalty which may be imposed exceeds 60 days imprisonment as set forth in s. 775.082...." Although Officer Byers' injury did not occur during the theft of the backhoe, we agree that the theft of the backhoe "caused the alleged injury." The evidence demonstrated that Officer Byers would not have been injured if a backhoe was not being used to move the tree. Therefore, we find that the "criminal acts" exception is applicable and that the trial court properly granted the Estate's motion for summary judgment on the issue of worker's compensation immunity.
Because we are reversing and remanding for a new trial, we address one other issue raised by the Estate. The Estate argues that the trial court erred by instructing the jury on the defense of necessity. We agree.
A defendant is entitled to have the jury instructed on his theory of defense if there is any evidence presented which supports the defendant's theory. Bozeman v. State, 714 So.2d 570, 572 (Fla. 1st DCA 1998); L.K., 532 So.2d at 1098. In order to have a jury instructed on the defense of necessity, the evidence must show
(1) that the defendant reasonably believed that his action was necessary to avoid an imminent threat of death or serious bodily injury to himself or others, (2) that the defendant did not intentionally or recklessly place himself in a situation in which it would be probable that he would be forced to choose the criminal conduct, (3) that there existed no other adequate means to avoid the threatened harm except the criminal *1286 conduct, (4) that the harm sought to be avoided was more egregious than the criminal conduct perpetrated to avoid it, and (5) that the defendant ceased the criminal conduct as soon as the necessity or apparent necessity for it ended.
Bozeman, 714 So.2d at 572.
The evidence at trial established that the backhoe was merely taken to expedite the clearing of trees and debris following Hurricane Andrew. When the theft of the backhoe occurred, there was no indication that either the trees or the debris posed an immediate danger to anyone. Therefore, we agree with the Estate that the trial court improperly instructed the injury on the defense of necessity where the evidence failed to establish that the theft of the backhoe was "necessary to avoid an imminent threat of death or serious bodily injury to himself or others."
In our opinion, the remaining issues raised by the parties lack merit.
Reversed and remanded.
GREEN, J. (dissenting).
With all due respect, we should affirm the defense verdict because the undisputed record evidence supports the appellees' argument, made on the cross-appeal, that this entire action is barred by worker's compensation immunity because the criminal acts exception is inapplicable here as a matter of law. For that reason, I believe that the appellees' motion for summary judgment on this issue should have been granted.
I. Facts
The majority correctly recognizes that the unfortunate demise of the decedent, John M. Byers, Jr., was solely the result of a freak accident presumably caused by a fellow employee's negligent use of a stolen backhoe while trying to clear trees and debris from a road after Hurricane Andrew. What the majority apparently fails to recognize, however, is that the "criminal act" (i.e., the taking and continued use of the backhoe without the owner's permission) was not the legal cause of the decedent's death. In other words, the decedent was not killed because a backhoe was stolen, but because a branch from a tree struck Byers in the head. For this reason, the criminal acts exception to worker's compensation immunity was not triggered, and this case is barred.
To fully understand why this case is completely barred by worker's compensation immunity, it is necessary to first outline the undisputed evidence in more detail. As is necessary, I do so in the light most favorable to the appellants. See Turner v. PCR, Inc., 754 So.2d 683, 684 (Fla. 2000) (holding that appellate court reviewing summary judgment motion must examine record in light most favorable to the non-moving party).
On August 24, 1992, Hurricane Andrew hit South Florida and caused a substantial amount of property damage. As a result of the storm, Ocean Reef was without electricity and phone service for weeks. Many of the roads were blocked by fallen debris and trees. Crew workers from the Monroe County Public Works Department were sent to clear the roads. The public safety officers could not get the emergency vehicles through the road debris. As is indicated by the majority, on the day after the storm, the public safety officers were manually clearing debris and trees when Delgado, a co-worker of Byers, spotted a backhoe at a gas station. The backhoe was owned by a construction company named Pieco which had left it at the station to ride out the storm. Delgado thought that utilizing the backhoe would be more efficient in their clearing efforts so he returned to the Public Safety Building *1287 to share his idea of taking and using this backhoe with his superiors, appellees David Ritz and Paul Barcinas. Once Delgado received permission from Ritz and Barcinas to take and utilize the backhoe, Delgado and others returned to the gas station, hot-wired the backhoe, and drove it back to the Public Safety Building. They could not contact the owner of the backhoe because there was no telephone service at the time.
At the Public Safety Building, Delgado used the backhoe to clear fallen roof tiles and to move a fallen antenna and propane tank. All of Delgado's superiors either approvingly watched him operate the backhoe and/or directed him in its use. After the parking lot was cleared, the decision was made to use the backhoe to clear the roads of Ocean Reef so emergency vehicles could pass.
Later, at approximately five o'clock in the afternoon, Delgado and Byers were sent to Sunset Cay, a cul-de-sac, with the backhoe to clear a very large tree that had fallen across the road. It was during this time that the accident which claimed Byers' life occurred. Delgado and Byers used a chainsaw to cut some of the heavier branches from the tree and pushed them out of the way with the backhoe. Delgado testified that he then directed Byers to move away and that Byers moved at least 15 to 30 feet, if not 40 to 50 feet away from the backhoe. Delgado attempted to move one of the recently cut tree limbs; when he put the backhoe into gear he heard a loud crack, felt a jolt, and looked over to see Byers lying on the ground. The backhoe was not actually touching the tree at the moment of the accident, but was a few feet away from it. Apparently, Delgado's actions had released another limb which unexpectedly broke free, pivoted in the air and struck Byers in the head causing massive head injuries. Byers was airlifted to Jackson Memorial Hospital where he remained in intensive care for five days before he died.
Delgado testified, in the plaintiff's case in chief, that he was familiar with the operation of heavy equipment and that he had operated a backhoe prior to the accident. This prior experience, however, did not include the removal of tree limbs and he had not foreseen the possibility that another tree branch would suddenly be released.
II. Proceedings Below
Byers' father filed this wrongful death action against his son's supervisors, Ritz and Barcinas. He alleged that because Ritz and Barcinas had committed a crime (i.e., the theft of the backhoe) which caused his son's death, they were not entitled to worker's compensation immunity as set forth in section 440.11(1), Florida Statutes (1991). This statute provides in pertinent part that:
The same immunity provisions enjoyed by an employer shall also apply to any... supervisor, or other person who in the course and scope of his duties acts in a managerial or policymaking capacity and the conduct which caused the alleged injury arose within the course and scope of said managerial or policymaking duties and was not a violation of law, whether or not a violation was charged, for which the maximum penalty which may be imposed exceeds 60 days imprisonment as set forth in s. 775.082. (emphasis added).
Both parties moved for summary judgment. The appellees moved for summary judgment on grounds that the entire action was barred by worker's compensation immunity, asserting that the theft of the backhoe was not the "cause" of the decedent's death and, therefore, the criminal acts exception was not triggered. This *1288 motion was denied. The appellant moved for partial summary judgment claiming that the appellees' taking and continued use of the backhoe constituted a violation of law, to wit, grand theft, for which the maximum penalty exceeds sixty days.[2] Appellants claimed, therefore, that as a matter of law, the appellees were not entitled to worker's compensation immunity. This motion was granted.
The case proceeded to trial. The jury returned a defense verdict concluding that neither of the appellees was guilty of theft of the backhoe. Appellant has taken the instant appeal and claims that a number of evidentiary and procedural irregularities occurred during the trial, requiring reversal. These are the matters addressed in the majority's opinion. The appellees have cross-appealed the denial of their motion for summary judgment on, among other things, the worker's compensation issue. I believe that this is the dispositive issue in this case, yet it has gone virtually unaddressed by the majority.
III. Law
Under Florida's Worker's Compensation Act ("the Act"), an employer who secures worker's compensation coverage for his workers receives extensive immunity from suit by injured workers. Immunity is lost, however, if the employer engages in an intentional act designed to cause, or substantially certain to cause, injury or death to an employee. Eller v. Shova, 630 So.2d 537, 540-41 (Fla.1993). This immunity also applies to managerial or policymaking employees unless their actions amount to culpable negligence, id. at 541, which is defined as "`reckless indifference' or `grossly careless disregard' of human life". Id at 541 n. 3. This broad immunity fits in with the overall purpose of the Act to provide employees with compensation for on-the-job injuries, regardless of fault, in exchange for giving employers and managers immunity, with few exceptions, from civil suits. See id. at 542.
Florida courts have routinely interpreted the Act broadly to preserve immunity in the face of sometimes egregious acts by employers and managers as long as those acts fell short of intentional torts or culpable negligence. See, e.g., Mekamy Oaks, Inc. v. Snyder, 659 So.2d 1290, 1291 (Fla. 5th DCA 1995)(holding that employer retained worker's compensation immunity where supervisor removed safety switch from lawnmower, causing plaintiff to be thrown from mower and cut his foot); Emergency One, Inc. v. Keffer, 652 So.2d 1233, 1235 (Fla. 1st DCA 1995) (finding that employer retained worker's compensation immunity where supervisor refused to obtain plastic brushes because of expense, and this refusal led to employee's being severely burned). Moreover, managers who had passively exposed a worker to injury have been found to retain immunity even though the manager's conduct could otherwise be deemed culpable negligence. See Kennedy v. Moree, 650 So.2d 1102, 1106 (Fla. 4th DCA 1995). Thus, the courts have routinely found that a high degree of culpability is necessary to vitiate the Act's immunity. Id.
One of the few exemptions from this broad immunity is the "criminal acts" exception, where a managerial or policymaking employee loses immunity for conduct which causes injury to an employee and *1289 violates a law that has a maximum penalty exceeding 60 days imprisonment. In this case, assuming, as we must, that the appellees did give permission to steal and use the backhoe, the issue is whether this theft was the legal cause of Byers' death. Clearly, it was not. The majority nevertheless concludes that the taking of the backhoe caused Byers' injury because he would not have been injured if a backhoe had not been taken and used to move the trees. Majority Opinion at 1285.[3] This is merely a statement of "but for" cause, or causation-in-fact, which is legally insufficient and does not address the crucial question of whether defendants' actions were the proximate or legal cause of Byers' death.
Important policy considerations underlie the distinction between cause-in-fact and proximate cause.[4] As this court has said:
Florida courts ... have for good reason been most reluctant to attach tort liability for results which, although caused-in-fact by the defendant's negligent act or omission, seem to the judicial mind highly unusual, extraordinary, bizarre, or, stated differently, seem beyond the scope of any fair assessment of the danger created by the defendant's negligence. Plainly, the courts here have found no proximate cause in such cases based solely on fairness and policy considerations, rather than actual causation grounds.
Stahl v. Metropolitan Dade County, 438 So.2d 14, 19 (Fla. 3d DCA 1983). To this end, the Florida Supreme Court has held that proximate cause is concerned with whether and to what extent a defendant's conduct foreseeably and substantially caused the plaintiff's injury. McCain v. Fla. Power Corp., 593 So.2d 500, 502 (Fla. 1992). Most recently, in Florida Power & Light Co. v. Goldberg, 856 So.2d at 1033 (Fla. 3d DCA 2003) (en banc), rev'g 856 So.2d 1011 (Fla. 3d DCA 2002), we concluded that where an electrical utility company terminated the power to a traffic light and a fatal automobile accident ensued, any negligence on the part of the utility company regarding the traffic light could not be the legal or proximate cause of the collision because it was causally superseded, as a matter of law, by the actions of the drivers. Id. at 1034.
Similarly, the Fifth District applied this proximate cause principle to a criminal case in Todd v. State, 594 So.2d 802 (Fla. 5th DCA 1992). There, the defendant stole $110 from the collection plate at a church. A member of the congregation who had a preexisting heart condition gave chase in his car, experienced cardiac dysrhythmia, lost control of his car, and collided with a tree at low speed. He died of cardiac arrest. The state charged the defendant with manslaughter. Id. at 803. The Fifth District, using a tort analysis, found that although the defendant's petty *1290 theft may have been a cause-in-fact of the heart attack, it was not the proximate or legal cause of his death. Id. at 805. The court relied on a First District case, with similar facts, which concluded that in a criminal case, "a closer relationship between the result effected and that intended or hazarded is required." Id. at 805 (quoting Penton v. State, 548 So.2d 273, 275 (Fla. 1st DCA 1989)). In analyzing the nexus between the crime committed and the result effected in Todd, the court found that:
[a]lthough the petty theft did trigger a series of events that concluded in the death of [the victim] and was, in that sense, a "cause" of the death, the petty theft did not encompass the kind of direct, foreseeable risk of physical harm that would support a conviction of manslaughter. The relationship between the unlawful act committed (petty theft) and the result effected (death by heart attack during pursuit in an automobile) does not meet the test of causation historically or currently required in Florida for conviction of manslaughter.
Todd, 594 So.2d at 806.
IV. Conclusion
Section 440.11 plainly states that supervisors will have the same immunity as an employer if the conduct which caused the employee's injury: 1) arose within the course and scope of the supervisor's duties, and 2) was not a violation of law. § 440.11(1), Fla. Stat. Given the legislature's intent to provide employers with broad immunity,[5] and the court's practices of preserving this immunity,[6] I believe that the "cause" described in section 440.11 can mean nothing other than "proximate" or "legal" cause.
In the instant case, although the theft of the backhoe did trigger a series of events that ultimately resulted in Byers' death and was in that sense a "cause" of the death, the theft was not the "proximate cause" because it was causally superseded as a matter of law, by the unintentional actions of Delgado, the backhoe's operator. See Goldberg, 856 So.2d at 1034. Thus, because the stolen status of the backhoe was not the legal cause of the decedent's death, the criminal acts exception is inapplicable and this entire action is barred by worker's compensation immunity.[7]
For this reason, I would affirm the final judgment under review. See Chase v. Cowart, 102 So.2d 147, 150 (Fla.1958)(result in trial court must be affirmed if right, even if right for wrong reason).
RAMIREZ, J. (concurring).
I concur with the majority based on my reading of section 440.11, Florida Statutes (1991), which provides for worker's compensation immunity if "the conduct which caused the alleged injury ... was not a violation of the law." Under the explicit language of section 812.014, Florida Statutes (1991), it is clear that both Ritz and Barcinas committed theft of the backhoe, an offense which is a continuing one.
Section 812.014 explicitly proscribes "use" of "the property of another" as a *1291 necessary element for the offense of theft. Thus, the continued "use" of the backhoe can be construed as a "continuing" offense. This means that at the moment in which Byers was killed, the theft was still ongoing and, had a law enforcement officer happened on the scene, the officer could have arrested the perpetrators. I thus see no support in the statute or the case law for a distinction between cause-in-fact or proximate cause, nor do I see the need for such an analysis.
NOTES
[1] Section 440.11(1), Florida Statutes (1991), provides, in part, as follows:

The same immunity provisions enjoyed by an employer shall also apply to any ... supervisor, or other person who in the course and scope of his duties acts in a managerial or policymaking capacity and the conduct which caused the alleged injury arose within the course and scope of said managerial or policymaking duties and was not a violation of a law, whether or not a violation was charged, for which the maximum penalty which may be imposed exceeds 60 days imprisonment as set forth in s. 775.082.
[2] Section 812.014, Florida Statutes (1991) provides that a person commits a theft if

he knowingly obtains or uses ... the property of another with intent to, either temporarily or permanently: (a) Deprive the other person of a right to the property or a benefit therefrom; [or] (b) Appropriate the property to his own use or to the use of any person not entitled thereto.
[3] Indeed, if this were the correct legal standard, untenable arguments could be made that, but for the occurrence of the hurricane, the decedent would not have been killed or but for the fact that the decedent went to work on the date of the accident, he would not have been killed.
[4] See Stahl v. Metropolitan Dade County, 438 So.2d 14, 17 (Fla. 3d DCA 1983), wherein we stated:

the "proximate cause" element of a negligence action embraces, at the very least, a causation-in-fact test, that is, the defendant's negligence must be a cause-in-fact of the plaintiff's claimed injuries.... [T]here can be no liability for any tort unless it be shown that the defendant's act or omission was a cause-in-fact of the plaintiff's claimed injuries. To be sure, such a showing, without more, is insufficient to establish the "proximate cause" element of a negligence action, but it is plainly a sine qua non ingredient thereof.
[5] See Eller v. Shova, 630 So.2d 537, 541 (Fla. 1993).
[6] See Mekamy Oaks, Inc. v. Snyder, 659 So.2d 1290 (Fla. 5th DCA 1995) and the other cases cited and discussed at page 1288.
[7] Indeed, had the backhoe in this case been borrowed, rented or purchased from its owner at the time of the accident, there would be no question that this action is barred by worker's compensation immunity. Given how the accident actually occurred, it makes no sense to me to conclude that the result should be different because of the legal status of the backhoe.