890 So.2d 343 (2004)
John M. BYERS, as Personal Representative of the Estate of John M. Byers, Jr., deceased, Appellant,
v.
David RITZ and Paul Barcinas, Appellees.
No. 3D01-3585.
District Court of Appeal of Florida, Third District.
December 15, 2004.
*344 Eversole & Rudd, P.A.; Albert Gordon; Hersch & Talisman, P.A. and Patrice A. Talisman, Miami, for appellant.
Lane, Reese, Aulick, Summers & Field and Paul Field; David L. Markarian, Miami, for appellees.
Before SCHWARTZ, C.J., and COPE, LEVY, GERSTEN, GODERICH, GREEN, FLETCHER, SHEVIN, RAMIREZ, and SHEPHERD, JJ.

ON MOTION FOR REHEARING EN BANC
GREEN, J.
We grant the appellees' motion for rehearing and rehearing en banc, withdraw *345 our previous opinion filed November 26, 2003, and issue the following in its stead.
The plaintiff/appellant, John M. Byers, appeals from a final judgment entered in favor of the defendants/appellees, David Ritz and Paul Barcinas, in a wrongful death action. Because we find that this action is barred by worker's compensation immunity, we affirm the final judgment in favor of the appellees.

I. Facts
This case arises out of the tragic death of John M. Byers, Jr., which occurred in the aftermath of Hurricane Andrew. On August 24, 1992, Hurricane Andrew hit South Florida and caused substantial property damage. As a result of the storm, the community of Ocean Reef, in Monroe County, was without electricity and phone service for weeks. Many of the roads were blocked by fallen debris and trees. Crew workers from the Monroe County Public Works Department were sent to clear the roads. The workers could not get the emergency vehicles through the debris. On the day after the storm, the public safety workers were manually clearing debris and trees when Delgado, a co-worker of Byers, spotted a backhoe at a gas station. The backhoe was owned by a construction company named Pieco which had left it at the station to ride out the storm. Delgado thought that using the backhoe would be more efficient in their clearing efforts so he returned to the Public Safety Building to share his idea of taking and using this backhoe with his superiors, appellees David Ritz and Paul Barcinas. Once Delgado allegedly received permission from Ritz and Barcinas to take and use the backhoe, Delgado, Byers and others returned to the gas station, hot-wired the backhoe, and drove it back to the Public Safety Building. They could not contact the owner of the backhoe because there was no telephone service at the time.
At the Public Safety Building, Delgado used the backhoe to clear fallen roof tiles and to move a fallen antenna and propane tank. Delgado's superiors allegedly either approvingly watched him operate the backhoe and/or directed him in its use. After the parking lot was cleared, the decision was made to use the backhoe to clear the roads of Ocean Reef so emergency vehicles could pass.
At approximately five o'clock in the afternoon, Delgado and Byers took the backhoe to Sunset Cay, a cul-de-sac, to clear a very large tree that had fallen across the road. Delgado and Byers used a chainsaw to cut some of the heavier branches from the tree and pushed them out of the way with the backhoe. Delgado testified that he then directed Byers to move away and that Byers moved at least 15 to 30 feet, if not 40 to 50 feet away from the backhoe. Delgado then attempted to move one of the recently cut tree limbs. When he put the backhoe into gear he heard a loud crack, felt a jolt, and looked over to see Byers lying on the ground. Apparently, Delgado's actions had released another limb which unexpectedly broke free, pivoted in the air and struck Byers in the head causing massive injuries. Byers was airlifted to Jackson Memorial Hospital where he remained in intensive care for five days before he died.
Delgado later testified that he was familiar with the operation of heavy equipment and that he had operated a backhoe prior to the accident. This prior experience, however, did not include the removal of tree limbs and he had not foreseen the possibility that another tree branch would suddenly be released.

II. Proceedings Below
Byers' father filed this wrongful death action against his son's supervisors, Ritz *346 and Barcinas. He alleged that because Ritz and Barcinas had committed a crime (i.e., participating in the theft of the backhoe) that caused his son's death, they were not entitled to worker's compensation immunity as set forth in section 440.11(1), Florida Statutes (1991). This statute provides in pertinent part that:
The same immunity provisions enjoyed by an employer shall also apply to any ... supervisor, or other person who in the course and scope of his duties acts in a managerial or policymaking capacity and the conduct which caused the alleged injury arose within the course and scope of said managerial or policymaking duties and was not a violation of law, whether or not a violation was charged, for which the maximum penalty which may be imposed exceeds 60 days imprisonment as set forth in s. 775.082. (emphasis added).
Both parties moved for summary judgment. Ritz and Barcinas moved on grounds that the entire action was barred by worker's compensation immunity, asserting that the theft of the backhoe was not the legal cause of the decedent's death and, therefore, the criminal acts exception was not applicable. This motion was denied. Byers moved for partial summary judgment on the issue that the Ritz and Barcinas' taking and continued use of the backhoe constituted a violation of law, namely, grand theft, for which the maximum penalty exceeds sixty days.[1] Byers claimed that, as a matter of law, the appellees were not entitled to worker's compensation immunity. This motion was granted.
The case proceeded to trial. The jury returned a defense verdict concluding that neither Ritz nor Barcinas were guilty of theft of the backhoe. Byers appealed and claimed that a number of evidentiary and procedural irregularities occurred during the trial, requiring reversal. Ritz and Barcinas cross-appealed on several issues, including the denial of their motion for summary judgment on the worker's compensation issue. This court affirmed that denial but reversed and remanded on other grounds. See Byers v. Ritz, 859 So.2d 1282, 1285-86 (Fla. 3d DCA 2003). Ritz and Barcinas moved for rehearing and rehearing en banc, which we now grant.

III. Law
Under Florida's Worker's Compensation Act ("the Act"), an employer who secures worker's compensation coverage for his employees receives extensive immunity from suit by injured workers. Immunity is lost, however, if the employer engages in an intentional act designed to cause, or substantially certain to cause, injury or death to an employee. Eller v. Shova, 630 So.2d 537, 540-41 (Fla.1993). This immunity also applies to managerial or policymaking employees unless their actions amount to culpable negligence, id. at 541, which is defined as "`reckless indifference' or `grossly careless disregard' of human life". Id. at 541 n. 3. This broad immunity fits in with the overall purpose of the Act to provide employees with compensation for on-the-job injuries, regardless of fault, in exchange for giving employers and managers immunity, with few exceptions, from civil suits. See id. at 542.
Florida courts have routinely interpreted the Act broadly to preserve immunity *347 in the face of sometimes egregious acts by employers and managers as long as those acts fell short of intentional torts or culpable negligence. See, e.g., Mekamy Oaks, Inc. v. Snyder, 659 So.2d 1290, 1291 (Fla. 5th DCA 1995) (holding that employer retained worker's compensation immunity where supervisor removed safety switch from lawnmower, causing plaintiff to be thrown from mower and cut his foot); Emergency One, Inc. v. Keffer, 652 So.2d 1233, 1235 (Fla. 1st DCA 1995) (finding that employer retained worker's compensation immunity where supervisor refused to obtain plastic brushes because of expense, and this refusal led to employee's being severely burned). Moreover, managers who had passively exposed a worker to injury have been found to retain immunity even though the manager's conduct could otherwise be deemed culpable negligence. See Kennedy v. Moree, 650 So.2d 1102, 1106 (Fla. 4th DCA 1995). Thus, the courts have routinely found that a high degree of culpability is necessary to vitiate the Act's immunity. Id.
One of the few exemptions from this broad immunity is the "criminal acts" exception, where a managerial or policymaking employee loses immunity for conduct which causes injury to an employee and violates a law that has a maximum penalty exceeding 60 days imprisonment. In this case, assuming for the purposes of summary judgment that the appellees did give permission to steal and use the backhoe, the issue is whether the theft was the legal cause of Byers' death. The appellant claims that the taking of the backhoe caused Byers' injury because had the backhoe not been taken and used to move the trees, Byers would not have been injured.[2] This, however, is merely a statement of "but for" cause, or causation-in-fact, which does not address the crucial question of whether the appellees' actions were the proximate or legal cause of Byers' death.
Important policy considerations underlie the distinction between cause-in-fact and proximate cause.[3] As this court has said:
Florida courts ... have for good reason been most reluctant to attach tort liability for results which, although caused-in-fact by the defendant's negligent act or omission, seem to the judicial mind highly unusual, extraordinary, bizarre, or, stated differently, seem beyond the scope of any fair assessment of the danger created by the defendant's negligence. Plainly, the courts here have found no proximate cause in such cases based solely on fairness and policy considerations, rather than actual causation grounds.
Stahl v. Metropolitan Dade County, 438 So.2d 14, 19 (Fla. 3d DCA 1983). To this end, the Florida Supreme Court has held that proximate cause is concerned with whether and to what extent a defendant's *348 conduct foreseeably and substantially caused the plaintiff's injury. McCain v. Fla. Power Corp., 593 So.2d 500, 502 (Fla.1992). Most recently, in Florida Power & Light Co. v. Goldberg, 856 So.2d 1011 (Fla. 3d DCA 2003) (en banc), review granted, No. 03-1942, 870 So.2d 821 (Fla. March 11, 2004), we concluded that where an electrical utility company terminated the power to a traffic light and a fatal automobile accident ensued, any negligence on the part of the utility company regarding the traffic light could not be the legal or proximate cause of the collision because it was causally superseded, as a matter of law, by the actions of the drivers. Id. at 1034.
Similarly, the Fifth District applied this proximate cause principle to a criminal case in Todd v. State, 594 So.2d 802 (Fla. 5th DCA 1992). There, the defendant stole $110 from the collection plate at a church. A member of the congregation who had a preexisting heart condition gave chase in his car, experienced cardiac dysrhythmia, lost control of his car, and collided with a tree at low speed. He died of cardiac arrest. The state charged the defendant with manslaughter. Id. at 803. The Fifth District, using a tort analysis, found that although the defendant's petty theft may have been a cause-in-fact of the heart attack, it was not the proximate or legal cause of his death. Id. at 805. The court relied on a First District case, with similar facts, which concluded that in a criminal case, "a closer relationship between the result effected and that intended or hazarded is required." Id. at 805 (quoting Penton v. State, 548 So.2d 273, 275 (Fla. 1st DCA 1989)). In analyzing the nexus between the crime committed and the result effected in Todd, the court found that:
[a]lthough the petty theft did trigger a series of events that concluded in the death of [the victim] and was, in that sense, a cause of the death, the petty theft did not encompass the kind of direct, foreseeable risk of physical harm that would support a conviction of manslaughter. The relationship between the unlawful act committed (petty theft) and the result effected (death by heart attack during pursuit in an automobile) does not meet the test of causation historically or currently required in Florida for conviction of manslaughter.
Todd, 594 So.2d at 806.
Section 440.11 plainly states that supervisors will have the same immunity as an employer if the conduct which caused the employee's injury: 1) arose within the course and scope of the supervisor's duties, and 2) was not a violation of law. Given the legislature's intent to provide employers with broad immunity,[4] and the court's practices of preserving this immunity,[5] the "cause" described in section 440.11 can mean nothing other than "proximate" or "legal" cause.

IV. Conclusion
In this case, although the theft of the backhoe triggered a series of events that ultimately resulted in Byers' death, the theft was not the "proximate cause" of death because it was causally superseded, as a matter of law, by the unintentional actions of Delgado, the backhoe's operator. See Goldberg, 856 So.2d at 1034. Thus, because the stolen status of the backhoe was not the legal cause of Byers' death, the criminal acts exception is inapplicable *349 and this entire action is barred by worker's compensation immunity.[6]
For this reason, we affirm the final judgment finding the appellees not liable. See Chase v. Cowart, 102 So.2d 147, 150 (Fla.1958) (holding result in trial court must be affirmed if right, even if right for wrong reason).
Affirmed.
SCHWARTZ, C.J., and COPE, LEVY, GERSTEN, FLETCHER, SHEVIN, and SHEPHERD, JJ. Concur.
GODERICH, Judge (dissenting).
I respectfully dissent. Contrary to the majority's en banc opinion, I believe that the "criminal acts" exception, § 440.11(1), Fla. Stat. (1991), is applicable and, therefore, this action is not barred by worker's compensation immunity.
The "criminal acts" exception is applicable when the conduct causing the injury was a violation of law that is punishable by more than 60 days imprisonment. In the instant case, although Officer Byers' injuries did not occur during the initial theft[7] of the backhoe, the theft "caused the alleged injury." Further, as explained by Judge Ramirez in his concurring opinion that is now being withdrawn as a result of the en banc majority,
[s]ection 812.014 explicitly proscribes "use" of "the property of another" as a necessary element for the offense of theft. Thus, the continued "use" of the backhoe can be construed as a "continuing" offense. This means that at the moment in which Byers was killed, the theft was still ongoing and, had a law enforcement officer happened on the scene, the officer could have arrested the perpetrators. I thus see no support in the statute or the case law for a distinction between cause-in-fact or proximate cause, nor do I see the need for such an analysis.
The en banc majority also finds that the "cause" described in section 440.11(1) is proximate cause or legal cause. Assuming that this is correct, based on the specific facts of this case, the trial court could not have granted summary judgment in favor of Ritz and Barcinas where the question of proximate cause was for the jury to determine. In McCain v. Florida Power Corp., 593 So.2d 500, 503-04 (Fla.1992), the Florida Supreme Court held:
On the question of proximate causation, the legal concept of foreseeability also is crucial, but in a different way. In this context, foreseeability is concerned with the specific, narrow factual details of the case, not with the broader zone of risk the defendant created.
...
Unlike in the "duty" context, the question of foreseeability as it relates to proximate causation generally must be left to the fact-finder to resolve. Thus where reasonable persons could differ as to whether the facts establish proximate causation  i.e., whether the specific injury was genuinely foreseeable or merely an improbable freak  then the resolution of the issue must be left to the fact-finder. The judge is free to take this matter from the fact-finder only where the facts are unequivocal, such as where *350 the evidence supports no more than a single reasonable inference.
(emphasis in original; citations omitted).
In the instant case, the stolen backhoe was being operated by an individual who was not trained to use backhoes to remove debris or trees. In fact, he had never been trained to operate a backhoe for any purpose. Based on these facts, because reasonable persons could differ as to whether Officer Byers' death was "genuinely foreseeable or merely an improbable freak," the trial court properly denied Ritz and Barcinas' motion for summary judgment, thereby leaving the issue of proximate cause to the fact-finders.
Finally, because I believe that the trial court correctly denied Ritz and Barcinas' motion for summary judgment, I would like to briefly address two other issues that would have required that this case be reversed and remanded for a new trial. First, the trial court reversibly erred by failing to give the jury the complete instruction on criminal theft that was requested by the Estate where the instruction was an accurate statement of the law, the facts in this case support the giving of the complete instruction, and the instruction, as requested, was necessary for the jury to properly resolve the issues in this case. L.K. v. Water's Edge Ass'n, 532 So.2d 1097 (Fla. 3d DCA 1988). Second, the trial court also reversibly erred by instructing the jury on the defense of necessity where the evidence at trial failed to establish that the theft of the backhoe was "necessary to avoid an imminent threat of death or serious bodily injury to himself or others." Bozeman v. State, 714 So.2d 570, 572 (Fla. 1st DCA 1998).
RAMIREZ, J., concurs.
NOTES
[1] Section 812.014, Florida Statutes (1991) provides that a person commits a theft if

he knowingly obtains or uses ... the property of another with intent to, either temporarily or permanently: (a) Deprive the other person of a right to the property or a benefit therefrom; [or] (b) Appropriate the property to his own use or to the use of any person not entitled thereto.
[2] Indeed if this were the correct legal standard, it could be argued that, "but for" the occurrence of the hurricane the decedent would not have been killed, or "but for" the fact that the decedent went to work on the date of the accident, he would not have been killed.
[3] See Stahl v. Metropolitan Dade County, 438 So.2d 14, 17 (Fla. 3d DCA 1983), wherein we stated:

the "proximate cause" element of a negligence action embraces, at the very least, a causation-in-fact test, that is, the defendant's negligence must be a cause-in-fact of the plaintiff's claimed injuries.... [T]here can be no liability for any tort unless it be shown that the defendant's act or omission was a cause-in-fact of the plaintiff's claimed injuries. To be sure, such a showing, without more, is insufficient to establish the "proximate cause" element of a negligence action, but it is plainly a sine qua non ingredient thereof.
[4] See Eller v. Shova, 630 So.2d 537, 541 (Fla.1993).
[5] See Mekamy Oaks, Inc. v. Snyder, 659 So.2d 1290 (Fla. 5th DCA 1995) and the other worker's compensation cases cited and discussed above.
[6] Indeed, had the backhoe in this case been borrowed, rented or purchased from its owner at the time of the accident, there would be no question that this action is barred by worker's compensation immunity. Given the way the accident actually occurred, it makes no sense to conclude that the result should be different because of the legal status of the backhoe.
[7] Theft is a violation of law that is punishable by more than sixty days imprisonment. § 812.014, Fla. Stat. (1991).