Dominic **FERACI**, individually and on behalf of his minor children, Nicolas Anthony Feraci and Kristen Nicole Feraci, Plaintiffs,

v.

**GRUNDY MARINE CONSTRUCTION COMPANY; P & S Construction Services, Inc.; Total Leasing Company, Inc.; Ronnie Resmondo; Paul Waynick; and Ledr Group, Inc., d/b/a TMG Staffing Services, Inc., Defendants.**

No. 3:02–CV–525/MCR.

United States District Court, N.D. Florida, Pensacola Division.

March 11, 2004.

---

205, 207, 213, and 215) and documents in support thereof (*see* docs. 200–01, 206, 208–09, 213–16, 243, 257–58, and 261), which were filed by the following five Defendants: (1) GRUNDY MARINE CONSTRUCTION COMPANY; (2) P & S CONSTRUCTION SERVICES, INC.; (3) TOTAL LEASING COMPANY, INC.; (4) RONNIE RESMONDO; and (5) LEDR GROUP, INC., d/b/a TMG STAFFING SERVICES, INC. Plaintiff DOMINIC FERACI timely filed memoranda and evidentiary materials in opposition to each motion. (Docs.223–27, 232–35). The court has taken the motions under advisement (Doc. 256) and is now prepared to rule on Defendants' motions. Because of an entitlement to workers' compensation immunity, the following Defendants' motions for summary judgment are GRANTED: (1) GRUNDY MARINE CONSTRUCTION COMPANY; (2) P & S CONSTRUCTION SERVICES, INC.; (3) RONNIE RESMONDO; and (4) LEDR GROUP, INC., d/b/a TMG STAFFING SERVICES, INC. Even though TOTAL LEASING COMPANY, INC., is not entitled to workers' compensation immunity, the company's motion for summary judgment is GRANTED, because Plaintiffs failed to demonstrate a cause of action against the company.

Ronnie G. Penton, Ronnie G. Penton PA, Bogalusa, LA, for Plaintiff.

Charles Thomas Wiggins, Beggs & Lane, Yancey Frank Langston, Moore Hill & Westmoreland PA, Charles Phillip Young, Emmanuel Sheppard & Condon, Pensacola, FL, for Defendants.

### ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

RODGERS, District Judge.

Pending before the court are five motions for summary judgment (*see* docs. 199,

## I. STATEMENT OF THE CASE

### A. Procedural History

On December 23, 2002, Plaintiffs filed the current action in this Court based on diversity jurisdiction.[1] (Doc. 1). Plaintiffs later filed an amended complaint (*see* doc. 55), to which all Defendants filed timely answers (*see* docs. 76–77, 82, 84, 96, 99). On April 30, 2003, Plaintiffs filed a motion to dismiss Defendant PAUL WAYNICK without prejudice from the case (*see* doc. 118), and on May 14, 2003, the Court granted Plaintiffs' motion (*see* doc. 123). The following three causes of action are

---

1. *See* 28 U.S.C. § 1332 (West 2003).

common to all remaining Defendants: (1) unspecified intentional torts; (2) negligence; and (3) gross negligence. (Doc. 55).[2] Beginning in mid-August 2002, the five remaining Defendants each filed a motion for summary judgment along with supporting documentation. (Docs.199–201, 205–209, 213, 215–216, 243, 257–258). Plaintiffs timely filed materials in opposition to each motion. (Docs.223–27, 232–35). On January 26, 2004, the Court entered an Order and Notice notifying the parties that summary judgment would be taken under advisement beginning on February 2, 2004 (Doc. 256).

### B. Relevant Facts

For purposes of ruling on Defendants' motions for summary judgment, the following facts are either undisputed or viewed in the light most favorable to Plaintiffs.[3] This is a personal injury case for damages arising out of an injury to Plaintiff DOMINIC FERACI ("Feraci"), which occurred on October 19, 2001, while he was working at a construction site. At the time of the accident, Defendant GRUNDY MARINE CONSTRUCTION COMPANY ("Grundy") was a prime contractor with the United States Army Corps of Engineers who had entered into a contract to perform construction operations at Hurlburt Field Air Force Base in Okaloosa County, Florida ("the project"). (Docs. 209, ¶ 1; 214, ¶ 1). Grundy subcontracted with Defendant P & S CONSTRUCTION SERVICES, INC. ("P & S"), to perform underground utility work on the project, including the installation of concrete and PVC pipe. (Docs. 209, ¶ 2; 214, ¶ 2). Pursuant to the terms of the subcontract between Grundy and P & S, P & S was obligated to secure and maintain worker's compensation coverage for the project personnel who were under P & S's direction and control. (Doc. 209, ¶ 3).

■ On September 30, 2001, Plaintiff DOMINIC FERACI ("Feraci") was hired as a laborer to work for P & S at the Hurlburt Field project. (Doc. 55, ¶ 6B). Feraci was employed by Defendants P & S and LEDR GROUP, INC. d/b/a TMG STAFFING SERVICES, INC. ("TMG"). (Doc. 214, ¶ 4).[4] TMG is an employee

---

2. Feraci also mentions the term "strict liability" once in the amended complaint; however, he never fleshes out a discernable cause of action for strict liability. In addition, the term negligence, as used in this Order, also includes any potential claim for negligence *per se.*

3. Some of the facts are construed according to Local Rule 56.1(A). Where the Court cites to the Defendants' statement of facts (*see* docs. 201, ¶ X; 209, ¶ X; 214, ¶ X; 216, ¶ X), Plaintiffs have failed to controvert that specific fact, and it is therefore deemed admitted for the limited purpose of ruling on Defendants' motions for summary judgment. In addition, the Court notes that Plaintiffs' materials in opposition to summary judgment are identical to each other for the following document numbers: 224, 226, 233, and 235.

4. Plaintiffs maintain that Defendant TOTAL LEASING COMPANY, INC. ("Total") was a co-employer of Feraci, an allegation which Total denies. Total "is engaged in the business of marketing employee management services." (Doc. 140, Ex. B, "Contract for Services" between Total and TMG, p. 1). On October 24, 2000, Total entered into a contract with TMG whereby Total agreed to "solicit client companies desiring risk management, human resources, employee benefits and payroll management on behalf of TMG." (*Id.*, p. 1, ¶ 1). In return, TMG agreed to "provide Total with risk management, including worker's compensation coverage, payroll management, human resource administration and employee benefits to Total client companies on behalf of TMG." (*Id.*). The contract expressly provided that "Total is an independent contractor in its relationship to TMG and agents of TMG." (*Id.*, p. 2, ¶ 3). In addition, TMG was obligated to provide "workers' compensation coverage for TMG's leased employees." (*Id.*, ¶ 4(a)).

Plaintiffs argues that, notwithstanding the contract between TMG and Total, Total is a

leasing company who leased Feraci to P & S to work on the project. (Doc. 214, ¶ 3). Pursuant to the February 1, 2001, contract between P & S and TMG, TMG was responsible for the "back office" and administrative tasks relevant to its leased personnel, including payment of worker's compensation premiums and payroll. (Doc. 209, ¶ 6). Thus, TMG acquired and maintained worker's compensation coverage for Feraci. (Docs. 201, ¶ 8; 209, ¶ 7). Throughout the course of the project, TMG did not interfere with P & S's day-to-day operations. (Doc. 209, ¶ 9). Pursuant to the terms of the P & S/TMG contract, TMG retained various rights related to safety and risk management; however, P & S was responsible for the direct supervision of the leased employees and for compliance with any relevant safety regulations. (Doc. 209, ¶ 10).

On the morning of the accident, Hugh Noa ("Noa"), one of Grundy's superintendents, ordered P & S to move four 48–inch elliptical concrete pipes from one location at the project site to another. (Docs. 209, ¶ 17; 214, ¶ 13). Noa did not give P & S any specific instructions as to the methods or procedures to be employed in moving the pipes. (Doc. 209, ¶ 18). P & S's foreman, Defendant RONNIE RESMONDO ("Resmondo") ordered Feraci and two co-workers, Paul Waynick ("Waynick") and Kenneth Melvin ("Melvin"), to move the four pipes using a Caterpillar excavator, commonly referred to as a "trac-hoe."[5] (Docs. 209, ¶¶ 12, 19; 216, ¶¶ 2–4).[6] The

co-employer of Feraci. First, Plaintiffs note that Feraci's W–2 tax form, which was issued by TMG, states that "Total Leasing" is Feraci's employer. (Doc. 227, ¶ 6). Second, Plaintiffs refer to Total's Employee Handbook which states that Total is the employer of record for payroll tax reporting, benefits, worker's compensation, etc. (*Id.*, ¶ 7). Although a Total employee testified that the Handbook is inaccurate, Total has not issued a new handbook correcting the error. (*Id.*, ¶ 9). Notwithstanding, Total was nothing more than an independent contractor who marketed employee management services on behalf of TMG. Total and TMG expressly contracted to an "independent contractor" relationship. Their contract in no way demonstrates an intent by either party for Total to be a co-employer of TMG's employees, and their actions also demonstrate otherwise. As a result, the Court finds that Total was not a co-employer of Feraci.

**5.** On October 18, 2001, P & S owner, Steve Smith, removed from the project site a Fiat Ellis loader (a type of heavy construction machinery with large forks) that was normally used for moving large elliptical pipes. (Doc. 224, ¶ 19). The day of the accident was the first time P & S had used a trac-hoe to hoist the large elliptical concrete pipes instead of using the Fiat Ellis loader. (Doc. 224, ¶ 20). Waynick had previous experience operating a trac-hoe, but only for moving earth and laying small pipe. (Docs. 216, ¶ 17; 224, ¶¶ 29–30). Waynick had neither read nor had been given

a manual detailing how to operate a trac-hoe. (Doc. 224, ¶¶ 34, 37). In addition, he had not been qualified to operate it through any formal testing procedures (*see id.*); however, a trac-hoe operator is not required to hold any certain license or certification (*see* doc. 216, ¶ 19).

**6.** Plaintiffs claim that Waynick and Resmondo had smoked marijuana on the morning of the accident; however, there is no proof in the record to support that allegation. When asked during his deposition, Feraci testified that he did not recall whether or not they in fact smoked marijuana that morning. (Doc. 214, ¶ 8). Feraci was only able to speculate that they did, because he said that they often had red eyes and smelled like marijuana. (Doc. 184, deposition I of Dominic Feraci, p. 93, lines 23–25; deposition II of Dominic Feraci, pp. 34, lines 1–8, and 61, line 19 through 62, line 11). In addition, Feraci testified that Waynick, on the morning of the accident, had bragged about using crystal meth the previous evening. (*Id.*, pp. 89, line 1 through 90, line 10; and Doc. 227, ¶ 28). However, Feraci conceded that he had no knowledge that Waynick was using crystal meth on the morning of the accident. (*Id.*, p. 90, lines 14–17). Also during deposition testimony, Kenneth Melvin (a co-worker) testified that Waynick and Resmondo often had red eyes and smelled like marijuana when they arrived at work, but he had no knowledge of

pipes were to be hoisted using a steel cable attached to the trachoe's bucket. (Doc. 209, ¶ 13).[7] Throughout his time on the project, Feraci had assisted crews using the same hoisting method with smaller pipes. (Docs. 209, ¶ 15; 216, ¶¶ 6–7).[8] Waynick operated the trac-hoe while·Feraci and Melvin worked as the ground personnel. (Doc. 209, ¶ 20). The men moved one of the concrete pipes without incident; however, while moving the second pipe, Feraci suffered injury. (Docs.209, ¶¶ 21–22, 214, ¶ 13). Feraci and Melvin had been standing away from the trac-hoe but somehow Feraci became crushed between the second concrete pipe and either the trachoe or the hoist cable. (Docs. 209, ¶ 22; 214, ¶¶ 13–14).[9] As a result of the accident, CNA Insurance, TMG's worker's compensation carrier, voluntarily paid workers' compensation benefits to Feraci. (Docs. 209, ¶ 25; 214, ¶¶ 6–7; 216, ¶ 20).

In Plaintiffs' amended complaint, Plaintiffs aver that the causes of Feraci's injuries were due to the Defendants' "willful and wanton disregard" for Feraci's safety, as well as the following "grossly negligent acts and omissions:"

(1) Inadequate supervision over the operations, work environment, and personnel[;]

(2) Too many employees unaware of each other's movement and activity[;]

(3) Very congested area requiring additional oversight, traffic management, and safety monitoring[;]

(4) Inadequately trained operator concerning the safety aspect of ground personnel[;]

(5) Inexperienced and/or inadequately trained laborers[;]

(6) No established procedures or policies for visual contact at all times with ground personnel assigned to the operator[;]

Waynick and Resmondo having smoked marijuana on the day of the accident. (Doc. 224, Ex. 8, deposition of Kenneth Melvin, p. 68, lines 2–24).

7. More specifically, "P & S implemented a procedure whereby the operator would place the bucket of the hydraulic excavator into the female end of the pipe and then lift one end of the pipe with the excavator boom. Once the pipe was elevated on one end, the laborers Kenneth Melvin and DOMINIC FERACI would rig a wire cable choker under the pipe for lifting. The choker was then hooked to the bucket, lifted by the excavator, and moved." (Doc. 214, ¶ 13).

8. P & S had experienced no injuries using its heavy equipment on the project prior to the accident that injured Feraci. (Docs. 214, ¶ 12; 216, ¶ 15).

9. There were no eyewitnesses to the accident itself, and in fact, no witness in this case knows exactly how Feraci was injured. Feraci has no memory of the accident itself other than being in great pain and feeling weight against his chest. (Docs. 201, ¶ 4; 214, ¶ 19; 216, ¶ 12). Waynick was unable to see the accident, and in fact, he had no knowledge of how Feraci got to the location where he was injured (Doc. 233, Ex. 3, deposition of Paul Waynick, p. 121, lines 19–22). Melvin described his memory of the accident as follows: "I did not see [Waynick] rotate the cab [of the trac-hoe]. All I know is right before I left [Feraci's] side, I looked up at [Waynick] and kept on going to this side....[Feraci] was being twisted. He was being rolled. And then when I looked at the side, I saw him being squished by the upper section....The cable was laying on [Feraci] when I got Waynick to finally swing away from him...." (Doc. 233, Ex. 8, deposition of Kenneth Melvin, p. 41, lines 6–8, 12–16, and p. 44, lines 7–9). Melvin also testified that, when he realized Feraci was being crushed, the big arm extending from the trac-hoe was rotated forty-five degree counterclockwise as opposed to being aligned with the trac-hoe's chassis. (*Id.*, p. 97, lines 6–25). Melvin, however, did not see the trac-hoe turn to the forty-five degree angle, so he does not know when or why Waynick made the turn. (*Id.*).

(7) Improperly adjusted mirrors on the trackhoe equipment to allow visual contact with ground personnel[;]

(8) Limited visibility of equipment operator with ground personnel and structures[;]

(9) No safety meeting was held before this operation addressing the relevant safety precautions of the job[;]

(10) Toolbox safety meetings were not conducted regularly or documented at the worksite[;]

(11) Inadequate hazard identification of operations, work tasks, personnel assignments, and the worksite[;]

(12) Failure to perform equipment safety inspections of equipment and worksites[;]

(13) Failure to provide ground spotters to eliminate blind equipment operations[;]

(14) Failure to maintain the working environment, equipment, machinery, supplies, and training for their employees to meet all state and federal OSHA standards[;]

(15) Failure to inspect, review, test, and approve safety procedures prior to commencing the subject operation[;]

(16) Failure to provide proper supervision and safety monitoring of the task[;]

(17) Failure to provide safe work practices and use of protective equip-

ment imposed by controlling federal, state and local government, and for all applicable laws, ordinances, and regulations related to environmental, equipment, machinery, and all other matters which affected the assigned employee's safety[;]

(18) Failure to provide a safe work environment involving heavy equipment, human beings, and construction materials and facilities[;]

(19) Failure to implement safety policies and procedures[;]

(20) Inadequate risk protection and prevention[;]

(21) Inadequate training, generally[;]

(22) Failure to provide a competent worksite superintendent.

(Doc. 55, ¶ 7A). In addition, Plaintiffs also generally refer to Defendants' knowing and reckless conduct, but they are not specific as to what and whose conduct demonstrates knowledge and recklessness.[10]

## II. MOTIONS FOR SUMMARY JUDGMENT

### A. Standard

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, show that no genuine issue of material fact exists and that the party moving is entitled to judgment as a matter of law. *See Celotex Corp. v. Ca-*

---

**10.** The allegations in the second amended complaint are as follows:

The agreements and contracts specify a course of conduct to comply with federal safety regulations which, when violated, constituted an imminent, clear, and present danger, all of which were willfully and wantonly disregarded by these Defendants. The [twenty-two failures listed above] were reckless and wanting in care and constituted a conscious disregard and/or indifference to the life and safety of employees such as Dominic Feraci and were substantially certain to result in injury or death. Additionally, these failures constituted intentional conduct in that the Defendants had actual knowledge of the wrongfulness of their conduct and the high probability that the injury to Mr. Feraci, or some similar worker, would result but, despite that knowledge, intentionally pursued their course of conduct and/or actively and knowingly participated in such conduct. (Doc. 55, ¶ 7B).

*trett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *See id.*

At the summary judgment stage, a court's function is not to weigh the evidence to determine the truth of the matter, but to determine whether a genuine issue of fact exists for trial. *See Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510. A genuine issue exists only if sufficient evidence is presented favoring the nonmoving party for a jury to return a verdict for that party. *See id.* "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1534 (11th Cir.1992) (citing *Mercantile Bank & Trust Co. v. Fidelity & Deposit Co.,* 750 F.2d 838, 841 (11th Cir.1985)).

When assessing the sufficiency of the evidence in favor of the nonmoving party, the court must view all the evidence, and all factual inferences reasonably drawn from the evidence, in the light most favorable to the nonmoving party. *See Hairston v. Gainesville Sun Publ'g Co.,* 9 F.3d 913, 918 (11th Cir.1993). The court is not obliged, however, to deny summary judgment for the moving party when the evidence favoring the nonmoving party is merely colorable or is not significantly probative. *See Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510. A mere scintilla of evidence in support of the nonmoving party's position will not suffice to demonstrate a material issue of genuine fact that precludes summary judgment. *See Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir.1990).

**B. Workers' Compensation Immunity under Florida Law**

In the current motions for summary judgment, all Defendants request the Court to grant summary judgment in their favor under the immunity provision of Florida's workers' compensation statute. *See* FLA. STAT. § 440.11(1) (2002). In response, Plaintiffs claim that the intentional tort exception to workers' compensation immunity applies to preclude summary judgment.

"Florida's Workers' Compensation Law, codified in chapter 440, Florida Statutes . . . , protects workers and compensates them for injuries in the workplace, without examination of fault in the causation of the injury." *Gerth v. Wilson,* 774 So.2d 5, 6 (Fla. 2nd DCA 2000). The Florida legislature intended the statute to provide "quick and efficient delivery of disability and medical benefits to an injured worker and to facilitate the worker's return to gainful reemployment at a reasonable cost to the employer." FLA. STAT. § 440.015 (2002). "Essentially, under this no-fault system, the employee gives up a right to a common-law action for negligence in exchange for strict liability and the rapid recovery of benefits." *Turner v. PCR, Inc.,* 754 So.2d 683, 686 (Fla.2000) (*citing United Parcel Service v. Welsh,* 659 So.2d 1234, 1235 (Fla. 5th DCA 1995); 2 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation* § 65.10 (Desk ed.1999)). "The goal of this policy is to avoid lawsuits at the outset, not simply to prevent adverse verdicts against employers and coworkers at the end of lengthy litigation." *Fleetwood Homes of Florida, Inc. v. Reeves,* 833 So.2d 857, 864 (Fla. 2nd DCA 2002).

For those who fall within the statute's purview, "workers' compensation is the exclusive remedy for 'accident[al] injury or

death arising out of work performed in the course and the scope of the employment.'" *Turner,* 754 So.2d at 686 (*quoting* FLA. STAT. § 440.09(1) (1997)). Thus, absent an excepted circumstance, Florida's Workers' Compensation Law generally protects employers from liability for an employee's injuries beyond the workers' compensation benefits. "At the same time . . . , the statutory scheme itself explicitly recognizes the liability of co-employees [and supervisors] to injured employees under certain limited conditions, including intentional or reckless actions." *Id.* (citing FLA. STAT. § 440.11(1) (1997)).

### 1. Intentional Tort Exception to Workers' Compensation Immunity

"Notwithstanding the general recognition of tort immunity for employers, the [Supreme Court of Florida] has recognized an intentional tort exception to the worker's compensation statutory scheme." *Turner,* 754 So.2d at 686 (citations omitted). Florida Workers' Compensation Law does not shield an employer from liability for intentional torts against an employee. *See id.* (citations omitted). Under the intentional torts exception, the employee must show that the employer "either [1.] 'exhibite[d] a deliberate intent

to injure *or* [2.] engage[d] in conduct which [was] substantially certain to result in injury or death.'" *Id.* at 687 (citation omitted) (emphasis in original); *see also McClanahan,* 854 So.2d at 795; *Gerth,* 774 So.2d at 6.

▮▮▮▮ When determining whether the substantial certainty standard has been met, the employer's conduct is evaluated under an objective standard. *See Turner,* 754 So.2d at 688–89; *see also McClanahan,* 854 So.2d at 795. "[A]n analysis of the circumstances in a case [is] required to determine whether a reasonable person would understand that the employer's conduct was 'substantially certain' to result in injury or death to the employee." *Turner,* 754 So.2d at 688. When determining substantial certainty, the employer's actual intent is not controlling. *See id.* In order to prove substantial certainty, a plaintiff employee must demonstrate "that the employer engaged in conduct that is at least worse than 'gross negligence.'" *McClanahan,* 854 So.2d at 795–96; *see also Turner,* 754 So.2d at 687 n. 4; *Tinoco v. Resol, Inc.,* 783 So.2d 309, 310–11 (Fla. 3rd DCA 2001).[11]

There have been several cases in Florida post-*Turner* applying the "substantial cer-

---

**11.** The Court notes that in 2003, the Florida legislature effectively overruled *Turner* when it amended § 440.11(1), Florida Statutes. The amendment codifies the intentional tort exception recognized by *Turner;* however, the legislature mandated that a plaintiff-employee prove the existence of the intentional tort exception by "clear and convincing evidence." FLA. STAT. § 440.11(1)(b) (2003). In addition, the legislature changed the substance of the exception by: (1) replacing the "substantial certainty" standard with a "virtually certain" standard, which is a higher standard; and (2) requiring that "the employer knew, based on prior similar accidents or on explicit warnings specifically identifying a known danger, was virtually certain to result in injury or death to the employee." *Id.* However, this legislative amendment is not retroactively applicable to the case at hand.

"In the absence of a clear legislative intent that a statute is retroactive, a statute is presumed prospective." *Foreman v. Russo,* 624 So.2d 333, 336 (Fla. 4th DCA 1993) (*citing State Department of Revenue v. Zuckerman–Vernon Corp.,* 354 So.2d 353 (Fla.1977)). Furthermore, if the legislature includes an effective date on which the amendment takes effect, then such inclusion rebuts any argument that a retroactive application was intended. *See Zuckerman–Vernon,* 354 So.2d at 358. Feraci's accident occurred in October 2001, and the amendment was not passed until 2003. There is no clear legislative intent that the amendment is retroactive, and since the legislature gave the amendment an effective date of October 1, 2003, any argument that the amendment should be retroactively applied to this case has been dispelled. As-

tainty" standard. In the *Tinoco* case, a Florida court determined that, under factual circumstances similar to the instant case, the plaintiff failed to prove the establishment of the intentional tort exception. In *Tinoco*, the plaintiff-employee brought an intentional tort action against his employer for injuries he sustained in a work-related accident. *See Tinoco*, 783 So.2d at 310. In defense, the defendant-employer asserted that it was immune from suit on the basis of workers' compensation immunity. *See id.* On the day of the accident, the plaintiff was working as a pipe fitter, and his work crew was digging a trench and installing pipe in the trench. *See id.* The crew was using a new excavator which had a defect that caused it to lurch forward two or three feet every time the operator tried to move it, and after that initial lurch, the excavator would operate properly. *See id.* The foreman knew of the defect, but concluded that it would be safe to use the machine so long as employees stayed at least three feet away from its forward path. *See id.* The entire crew knew of the defect, and prior to the plain-

tiff's injury, the excavator had been operated twenty-six or twenty-seven times without incident. *See id.* The plaintiff was in the operator's blind spot, so when the plaintiff stepped in front of the excavator to assist the lowering of a pipe, the operator did not see him. *See id.* As a result, the excavator lurched forward crushing the plaintiff's foot. *See id.*

The trial court in *Tinoco* granted summary judgement in favor of the employer on the basis of workers' compensation immunity. On appeal, the Third District Court of Appeal of Florida affirmed the trial court's ruling on the basis of *Turner. See id.* at 310–11. The court determined that "the facts of this case do not show that the employer exhibite[d] a deliberate intent to injure or engaged in conduct which [was] substantially certain to result in injury or death." *Id.* at 310 (quoting *Turner*, 754 So.2d at 687 n. 4). In addition, the district court noted that "the circumstances here demonstrate negligence, [b]ut under the case law, a showing of negligence, or even gross negligence, is not enough." *Id.* at 310–11 (citing *Turner*, 754 So.2d at 687 & n. 4).[12]

suming *arguendo* that it were retroactive, Defendant employers would still be entitled to immunity, because if Plaintiffs cannot demonstrate the existence of an intentional tort exception under the lower standard in *Turner*, then Plaintiffs would be unable to meet the more stringent standard announced in the 2003 amendment.

**12.** There two other noteworthy cases where Florida courts have determined that an employer's conduct did not rise to the requisite level of conduct for the plaintiff to maintain a lawsuit under *Turner 's* intentional tort exception. In *Fleetwood Homes*, the plaintiff, who was the personal representative of the decedent's estate, brought a wrongful death action against the deceased's former employer. *See Fleetwood Homes*, 833 So.2d at 859. The deceased, who normally had another job assignment, had been assigned to work at a table inside of the defendant's factory. *See id.* at 860. The table was situated adjacent to an

aisle used by forklifts to move supplies into the factory. *See id.* A forklift, driven by an experienced operator, drove passed the plaintiff carrying three rolls of sheet metal weighing about six hundred pounds. *See id.* The operator honked the horn for all nearby employees to move out of the way, but the deceased did not heed the warning. *See id.* The operator, who had been instructed by the defendant to continue when employees did not respond, continued moving down the aisle. *See id.* When the forklift went by the table where the deceased was working, the rolls of sheet metal hit a pipe, and one roll fell off of the forklift and struck the deceased in the head, killing him. *See id.* Evaluating the facts in light of the standard in *Turner*, the Second District Court of Appeal of Florida determined that the defendant employer was entitled to workers' compensation immunity, because the facts of the case did not rise to the level of an intentional tort. *See id.* at 868–69.

The case of *Sierra v. Associated Marine Institutes, Inc.*, 850 So.2d 582 (Fla. 2nd DCA 2003), found to the contrary, albeit on a very different set of facts. In *Sierra*, a Florida court determined that the plaintiff pled sufficient facts to preclude the employers' motion to dismiss on workers' compensation immunity grounds. *See id.* Defendant Big Cypress Wilderness Institute, Inc. ("Big Cypress"), contracted with the State of Florida to operate a juvenile detention facility, known as a "boot camp." *See id.* at 585. The juveniles, aged fourteen to eighteen, who were housed there had a history of serious felony offenses. *See id.* They had been placed in the facility due to the risk that they posed to public safety. *See id.*[13] The youths had also been assessed as flight risks; however, before assigning the deceased to guard the youths, the boot camp failed to inform him of the flight risk. *See id.* The boot camp assigned the deceased alone to oversee the youth's performance of heavy manual labor in a secluded area off of the camp's grounds. *See id.* During a break at 8:25 p.m., the youths struck the deceased in the head with their manual labor tools, machetes and a pickaxe. *See id.*

The plaintiff, the wife of the deceased, brought a wrongful death action against her husband's employers, Big Cypress and its parent company, Associated Marine Institutes, Inc. *See id.* at 585. The defendants filed a motion to dismiss arguing that they were shielded from liability under the workers' compensation immunity doctrine. *See id.* The trial court agreed with the defendants and dismissed the complaint with prejudice. *See id.* On appeal, the Second District Court of Appeal for Florida reversed the dismissal of the plaintiff's complaint. *See id.* According to the court, the plaintiff's complaint alleged facts sufficient to except the suit from immunity under the intentional tort exception. *See id.* Based on the facts as plead, the court determined that the defendants should have known that there was a substantial certainty that sending a new counselor alone to guard two serious, escape-risk felons who would be using potentially dangerous tools would result in the counselor's injury or death. *See id.* at 589.

### 2. Culpable Negligence of a Supervisor/Manager

As the Court indicated above, employers are not the only defendants who are clothed with workers' compensation immunity. Supervisors are also entitled to the same immunity from suit to which the employer is entitled. *See* FLA. STAT. § 440.11(1) (2002). Section 440.11(1), Florida Statutes, provides, in pertinent part:

> The same immunity provisions enjoyed by an employer shall also apply to any . . . supervisor . . . who in the course and scope of his or her duties acts in a managerial or policymaking capacity and

In *Garrick v. Publix Super Markets, Inc.*, 798 So.2d 875 (Fla. 4th DCA 2001), a security guard who was injured in an armed robbery brought an intentional tort claim against his employer, Brinks Incorporated. *See id.* at 876. The plaintiff alleged that Brinks deliberately withheld knowledge from the plaintiff of a potential armed robbery of an armored car that was supposed to occur at one of two Publix supermarkets at an unspecified time on an unspecified date, and the plaintiff further alleged that such non-disclosure led to his injuries. *See id.* at 876–79. Applying *Turner*'s objective standard, the Fourth District Court of Appeal of Florida affirmed the trial court's dismissal of the complaint. *See id.* at 879–80. According to the court, the complaint did not allege facts sufficient to establish that Brinks engaged in conduct substantially certain to result in injury to the plaintiff. *See id.*

13. The juveniles had records which included the following felonies: (1) aggravated assault; (2) battery; (3) prior escape; and (4) burglary. *See Sierra*, 850 So.2d at 586.

the conduct which caused the alleged injury arose within the course and scope of said managerial or policymaking duties and was not a violation of law, whether or not a violation was charged, for which the maximum penalty which may be imposed does not exceed 60 days' imprisonment as set forth in s. 775.082.

*Id.* Under § 775.082, Florida Statutes, the only crimes with penalties exceeding 60 days are first-degree misdemeanors. *See Kennedy*, 650 So.2d at 1106. Thus, "when evaluating whether the negligent conduct of [a] managerial [employee] rises to a level sufficient to abrogate their statutory immunity, such negligence must be equivalent to a violation of law constituting a first-degree misdemeanor or higher crime." *Id.* "Thus, pursuant to subsection 440.11(1), there would be no workers' compensation immunity for a managerial employee who, through culpable negligence, actively inflicted injury, but there would be immunity for a managerial employee who passively exposed an employee to injury even if the employee [were culpably negligent]." *Id.; see also Emergency One*, 652 So.2d at 1235. "Culpable negligence is negligence of a gross and flagrant character which evinces a reckless disregard for

the safety of others. It is that entire want of care which raises a presumption of indifference to consequences." *Killingsworth v. State*, 584 So.2d 647, 648 (Fla. 1st DCA 1991) (*citing State v. Greene*, 348 So.2d 3 (Fla.1977)).[14]

## C. Defendants' Individual Motions for Summary Judgment

### 1. TMG Staffing Services, Inc.'s Motion for Summary Judgment

In its motion for summary judgment, TMG argues that it is entitled to summary judgment for three reasons: (1) as Feraci's co-employer, it is clothed with workers' compensation immunity for Plaintiffs' various negligence claims; (2) Plaintiffs' evidence is not sufficient to prove an intentional tort; and (3) as an employee leasing company, TMG is not vicariously liable for its leased employees. In response, Plaintiffs claim to have provided evidence sufficient to meet the requirements of the intentional tort exception. Plaintiffs maintain that TMG exhibited "an intentional or wanton disregard" for Feraci's safety by failing to properly manage safety, risk, and hazard control at the project site prior to Feraci's accident.

**14.** Two examples of cases where culpable negligence was not found are as follows: (1) *Ross v. Baker*, 632 So.2d 224 (Fla. 2nd DCA 1994), *implied overruling on other grounds*, *Stucki v. Hopkins*, 691 So.2d 560 (Fla. 5th DCA 1997) (At a construction site, the injured employee-plaintiff and a co-worker attempted to move a piece of plywood to cover a hole in the floor at a construction site. Unfortunately, the piece of plywood was covering another hole, and when they went to move it, the plaintiff fell through the hole which it had been covering. A few days before the accident, one of plaintiff's supervisor's knew of the need for handrails on the holes at the construction site; however, the supervisor did not install them prior to the plaintiff's fall. The court determined that there was no culpable negligence because the hole had been

covered by plywood, which was recognized as an inferior method of protection); and (2) *Killingsworth v. State*, 584 So.2d 647 (Fla. 1st DCA 1991) (The defendant was loading a gun, which was being held between his legs and was pointed towards the floor, when it discharged, and the bullet ricocheted off of the interior of an automobile striking a nearby child.).

However, the court in *Byers v. Ritz*, 859 So.2d 1282 (Fla. 3rd DCA 2003) found culpable negligence where a police officer died as a result of injuries received from a backhoe that was being used in a post-hurricane cleanup effort. *See id.* The officer's supervisors took the backhoe without permission, and the court determined that theft of the backhoe was the cause of the officer's death. *See id.*

### a. Workers' Compensation Immunity

■ In response to TMG's motion, Plaintiffs do not dispute TMG's assertion that it is entitled to workers' compensation immunity for Plaintiffs' negligence claims. As previously noted by the Court, workers' compensation is the exclusive remedy for an injured employee whose injury arose out of work performed in the course and scope of his employment. TMG admits to being a co-employer of Feraci, and TMG leased him to P & S to work at Hurlburt Field. P & S had subcontracted to perform the underground installation of concrete pipe at the project site, and when Feraci was injured, he was assisting other P & S employees in the movement of concrete pipes from one area of the project site to another. Thus, Feraci's injury arose out of work performed in the scope of his employment. In addition, TMG provided workers' compensation insurance for Feraci. As a result, TMG is entitled to workers' compensation immunity and is entitled to summary judgment as a matter of law as to Plaintiffs' negligence claims.

### b. Intentional Tort Exception

In response to TMG's motion, Plaintiffs argue that they have brought forth sufficient evidence to meet the intentional tort exception to TMG's workers' compensation immunity defense. Further, Plaintiffs claim that TMG reserved the right of direction and control over the management of safety, risk, and hazard control over its leased employees working at the project site. Because of the retention of that right, Plaintiffs assert that TMG may be held vicariously liable for punitive damages for the intentional torts of its employees Waynick and Resmondo.

■ As previously noted by the Court, an employer is not entitled to workers' compensation immunity for intentional torts against an employee. To meet this intentional tort exception, Plaintiffs must show that TMG either exhibited a deliberate intent to injure Feraci or engaged in conduct that was substantially certain to result in injury to Feraci. First, there is no evidence in the record to demonstrate that TMG exhibited a deliberate intent to injure Feraci. Second, there is also no evidence in the record to demonstrate that TMG engaged in conduct which was "substantially certain" to result in injury to Feraci despite Plaintiffs' assertion that TMG did not manage safety, risk, and hazard controls regarding its employees at the project site.

TMG is an employee leasing company that is statutorily required to retain "a right of direction and control over management of safety, risk, and hazard control at the worksite or sites affecting its leased employees." FLA. STAT. § 468.525(4)(e) (2002). In keeping with the statutory requirement, TMG included in its employee leasing contract with P & S a clause which explicitly reserves such a right. (Doc. 140, Ex. F, Service Agreement between P & S and TMG, p. 2, § 4, ¶ 1). However, TMG's reservation of that right did not automatically create an obligation on behalf of TMG to exercise that right. At most, it may have created a duty to inspect the project site to ensure that P & S was complying with federal, state, and local safety regulations. Assuming arguendo that TMG had such a duty to inspect the safety of the project site, any failure to inspect would amount to either negligence or gross negligence, not reckless or wanton conduct.

Furthermore, Plaintiffs concede that there is no evidence in the record to demonstrate that TMG actually exercised the retained right to direct and control the safety, risk, and hazard control at the project site. Assuming arguendo that there were facts to demonstrate TMG's exercise of that right, failure to comply with any

duties imposed smacks of negligence, or maybe even gross negligence, tort claims which the Court has already determined cannot be brought against TMG. After analyzing the factual circumstances in this case, Plaintiffs have failed to demonstrate that a reasonable person would understand that TMG's conduct was "substantially certain" to result in injury to Feraci, and based on the evidence in the record, no reasonable jury could conclude otherwise.

In addition, Plaintiffs' argument that TMG is vicariously liable for potential punitive damages based on the conduct of its employees Waynick and Resmondo is equally unavailing. In their response to summary judgment, Plaintiffs cite *Carroll Air Systems, Inc. v. Greenbaum*, 629 So.2d 914 (Fla. 4th DCA 1993), to support the proposition that TMG is vicariously liable. The court in *Carroll* stated that "an employer may be held liable for vicarious punitive damages under respondeat superior when, in addition to the willful and wanton misconduct by the employee, there is independent fault or negligence on the part of the employer." *Id.* at 917 (citing *Mercury Motors Express, Inc. v. Smith*, 393 So.2d 545 (Fla.1981)). *Carroll*, however, is not analogous to the case at hand. The employer in *Carroll* was held liable for punitive damages to a third-party (*i.e.*, non-employees) for injuries which had been caused by an employee. *See Carroll*, 629 So.2d at 917. In that case, workers' compensation did not factor into the liability equation.

▮ In the case at hand, Feraci, the injured party, was not a third-party outside of the employment relationship. Rather, he was an employee of TMG, and the accident that injured him was covered by Florida's Workers' Compensation Law.

Furthermore, it appears that *Carroll's* vicarious liability rule could not be properly applied to a workers' compensation case. Workers' compensation immunity, when applicable, precludes an employer's liability for negligence in relation to an employee's injury or death. If *Carroll's* vicarious liability rule could be successfully applied to an employer who is otherwise entitled to worker's compensation immunity, then the employer's own negligence would cause it to be vicariously liable for punitive damages. That would be an illogical result and a backdoor approach for holding an employer liable for negligence in direct contravention of the spirit of Florida's Workers' Compensation Laws.[15]

### 2. *P & S Construction Services, Inc.'s Motion for Summary Judgment*

In its motion for summary judgment, P & S argues that it is entitled to summary judgment as to all of Plaintiffs' claims based upon the doctrines of workers' compensation immunity and election of remedies. In response, Plaintiffs argue that their evidence establishes the requirements of the intentional tort exception and that the election of remedies doctrine is inapplicable to the instant case.

### a. *Workers' Compensation Immunity*

In response to P & S's motion, Plaintiffs do not dispute P & S's assertion that it is entitled to workers' compensation immunity for Plaintiffs' negligence claims. As previously noted by the Court, workers' compensation is the exclusive remedy for an injured employee whose injury arose out of work performed in the course and scope of the employment. P & S admits to being a co-employer of Feraci, and Feraci

---

was leased to P & S to work at Hurlburt Field. As the Court previously explained, Feraci's injury arose out of work performed in the scope of his employment. Therefore, P & S is entitled to workers' compensation immunity and is entitled to summary judgment as a matter of law regarding Plaintiffs' negligence claims.

### b. Intentional Tort Exception

In response to P & S's motion, Plaintiffs argue that they have brought forth sufficient evidence to meet the intentional tort exception to workers' compensation immunity. According to Plaintiffs, the facts of this case "indicate a deliberate, intentional, and gross disregard for safety," and the "composite of circumstances was substantially certain to result in death or injury to Feraci." In addition, Plaintiff's argue that P & S is vicariously liable for punitive damages based upon certain actions of its employees.

As previously noted by the Court, an employer is not entitled to workers' compensation immunity for intentional torts against an employee. To meet this intentional tort exception, Plaintiffs must show that P & S either exhibited a deliberate intent to injure Feraci or engaged in conduct that was substantially certain to result in injury to Feraci. First, there is no evidence in the record to demonstrate that P & S exhibited a deliberate intent to injure Feraci. Second, there is also no evidence in the record to demonstrate that P & S engaged in conduct which was "substantially certain" to result in injury to Feraci.

Plaintiffs attempt to join together twenty-two alleged "grossly negligent actions or omissions," which are listed on pages 6 and 7 of this Order, to maintain that the "composite of the circumstances" was substantially certain to cause injury or death to Feraci. In other words, Plaintiffs are trying to stack numerous instances of alleged negligent (or even grossly negligent) conduct by P & S to arrive at the conclusion that Feraci's injury was substantially certain to result. The Second District Court of Appeal of Florida has expressly rejected such a position. *See Fleetwood Homes*, 833 So.2d at 868–69. In *Fleetwood Homes*, the court stated that "we do not believe that the supreme court in *Turner* intended to allow a plaintiff to add together small risks of injury in order to reach a combined total where the likelihood of injury to some employee sometime was substantially certain." *Id.* Therefore, assuming *arguendo* that the alleged twenty-two "grossly negligent acts or omissions" occurred, Plaintiffs cannot lump them together to demonstrate substantial certainty. At most, those acts or omissions would demonstrate gross negligence. As a result, after analyzing the factual circumstances in this case, the Court finds that Plaintiffs have failed to demonstrate that a reasonable person would understand that P & S's conduct was "substantially certain" to injure Feraci. Based on the evidence in the record, no reasonable jury could conclude otherwise.[16]

In addition, Plaintiffs' argument that P & S is vicariously liable for potential punitive damages for Resmondo's deliberately allowing an intoxicated Waynick to operate the trac-hoe is equally unavailing. In their response to summary judgment, Plaintiffs cite *Carroll Air Systems, Inc. v. Greenbaum*, 629 So.2d 914 (Fla. 4th DCA 1993), to support the proposition that TMG is vicariously liable. For reasons already stated by the Court, *Carroll* is not applicable to this case. Furthermore, the evi-

---

16. Furthermore, none of the acts or omissions, standing alone, are sufficient to demonstrate "substantial certainty."

dence in the record does not create any question about whether Waynick was under the influence of drugs on the morning of the accident. Thus, there is no evidence demonstrating that Resmondo deliberately allowed Waynick to operate the trac-hoe while Waynick was under the influence of drugs.

### 3. *Grundy Marine Construction Company's Motion for Summary Judgement*

In its motion for summary judgment, Grundy argues that it is entitled to summary judgment for two reasons: workers' compensation immunity, and Plaintiffs' failure to establish the intentional tort exception to Grundy's immunity. In response, Plaintiffs argue that the evidence in this case indicates Grundy's "intentional and gross disregard for safety." According to Plaintiffs, that evidence is sufficient to establish the intentional tort exception to Grundys' workers' compensation immunity. Additionally, Plaintiffs assert that Grundy is vicariously liable for the tortious intentional acts of its subcontractor, P & S.

#### a. *Workers' Compensation Immunity*

In its motion, Grundy argues that Plaintiffs' negligence claims against it are barred by Florida's workers' compensation immunity doctrine. Even though Grundy is not a direct employer of Feraci, Grundy asserts that, as a general contractor, it is a "statutory employer" under Section 440.10(1)(b), Florida Statutes. Section 440.10(1)(b) provides that:

> In case a contractor sublets any part or parts of his contract work to a sucontractor or subcontractors, all of the employees of such contractor and subcontractor or subcontractors engaged on such contract work shall be deemed to be employed in one and the same business or establishment; and the contractor shall be liable for, and shall secure, the payment of compensation to all such employees except to employees of a subcontractor who has secured such payment.

FLA. STAT. § 440.10(1)(b) (2002). Thus, "[a] contractor may be immune from suit where workers' compensation has been paid on behalf of the subcontractor." *Carnegie Gardens Nursing Center v. Banyai,* 852 So.2d 374, 375–76 (Fla. 5th DCA 2003) (citing *Yero v. Miami–Dade County,* 838 So.2d 686, 687 (Fla. 3rd DCA 2003); FLA. STAT. § 440.1(1)(b)). In the case at hand, Grundy was the general contractor of the project, and Grundy hired P & S as a subcontractor to work at Hurlburt Field. P & S secured the workers' compensation benefits for Feraci in the employee leasing agreement between P & S and TMG, and TMG provided those benefits for Feraci. Therefore, the subcontract between Grundy and P & S made Grundy a statutory employer under § 440.10(1)(b), Florida Statutes, thereby entitling Grundy to workers' compensation immunity.[17] As a result, Grundy is entitled to summary judgment as to Plaintiffs' negligence claims.

#### b. *Intentional Tort Exception*

In response to Grundy's motion, Plaintiffs argue that they have brought forth sufficient evidence to meet the intentional tort exception to workers' compensation immunity. According to Plaintiffs, the evidence in this case indicates "an intentional or gross disregard" by Grundy for Feraci's safety. In addition, Plaintiffs maintain that Grundy is vicariously liable for the intentional torts of its subcontractors.

---

**17.** In addition, the Court notes that Plaintiffs did not refute Grundy's assertion that it was a statutory employer of Feraci.

As previously noted by the Court, an employer is not entitled to workers' compensation immunity for intentional torts against an employee. To meet this intentional tort exception, Plaintiffs must show that Grundy either exhibited a deliberate intent to injure Feraci or engaged in conduct that was substantially certain to result in injury to Feraci. First, there is no evidence in the record to demonstrate that Grundy exhibited a deliberate intent to injure Feraci. Second, there is also no evidence in the record to demonstrate that Grundy engaged in conduct which was "substantially certain" to result in injury to Feraci.

Plaintiffs attempt to join twenty-two alleged "grossly negligent actions or omissions," which are listed on pages 6 and 7 of this Order, by Grundy to maintain that the "composite of the circumstances" was substantially certain to cause injury or death to Feraci. As previously explained in this Order, Florida law does not allow Plaintiffs to accumulate several negligent (or grossly negligent) acts or omissions to demonstrate substantial certainty.[18] As a result, after analyzing the factual circumstances in this case, Plaintiffs have failed to demonstrate that a reasonable person would understand that Grundy's conduct was "substantially certain" to result in injury to Feraci. Based on the evidence in the record, no reasonable jury could conclude otherwise.

In addition, Plaintiffs argue (without legal citations in support) that Grundy is vicariously liable for the intentional torts of its subcontractor, P & S. Assuming Grundy could be vicariously liable in such a situation, no vicarious liability would exist in the instant case. The Court has already determined that the evidence in the record does not support a claim for an intentional tort against P & S; therefore, there is no intentional tort claim for which Grundy could be held vicariously liable.

### 4. Total Leasing Company, Inc.

In its motion for summary judgment, Total asserts that, despite Plaintiffs' contentions to the contrary, Total is not a co-employer of Feraci. Total argues that, in the event if it is considered an employer, it is nonetheless entitled to workers' compensation immunity. In response, Plaintiffs maintain that Total is a co-employer and that Total's immunity is abrogated by the intentional tort exception.

### a. Workers' Compensation Immunity

As the Court determined in footnote 4 of this Order, Total is not an employer of Feraci and is not entitled to workers' compensation immunity. Because Total is not immune from suit, there must be sufficient evidence in the record to support Plaintiffs' intentional tort and negligence claims against Total.

At the outset, the Court notes that Plaintiffs do not specify which of their intentional tort allegations apply to Total. However, it is of no consequence because the very nature of an intentional tort requires Plaintiffs to prove Total had:(1) an intent to offer injury to Feraci by force; (2) an intent to injure Feraci; or (3) acted in a manner that amounted to "exaggerated recklessness" as to Feraci's safety. *See e.g., Sullivan v. Atlantic Federal Savings & Loan Association,* 454 So.2d 52 (defining the elements of assault and battery); *Caprio v. American Airlines, Inc.,* 848 F.Supp. 1528, 1534 (M.D.Fla.1994) ("In order to submit a claim for punitive damages based upon intentional torts to the jury, Plaintiff must make a threshold showing that Defendant's conduct approaches a lev-

---

**18.** Assuming *arguendo* that Grundy committed all twenty-two acts or omissions, Plaintiffs have demonstrated nothing more than gross negligence.

el that 'transcends the level of simple negligence, and even gross negligence,...and enters the realm of wanton intentionality, exaggerated recklessness, or such an extreme degree of negligence as to parallel an intentional and reprehensible act.") (*quoting American Cyanamid Co. v. Roy,* 498 So.2d 859, 861 (Fla.1986)); *see also* 55 Fla. Jur.2d *Torts* § 5 (West 2004). There is no evidence in the record to demonstrate that Total had an intent to either offer to cause harm or to cause harm to Feraci, or had acted with exaggerated recklessness.[19] As a result, Plaintiffs cannot maintain a cause of action against Total for an intentional tort, and based on the evidence in the record, no reasonable jury could conclude otherwise.

In addition to the undefined intentional tort claims, Plaintiffs' amended complaint asserts claims for both negligence and gross negligence. "To sustain a cause of action for negligence, the burden of proof is on the plaintiff to establish that: (1) the defendant had a duty to protect the plaintiff; (2) the defendant breached that duty; and (3) the defendant's breach was the proximate cause of the plaintiff's injuries and resulting damages." *Cooper Hotel Services, Inc. v. MacFarland,* 662 So.2d 710, 712 (Fla. 2nd DCA 1995) (citing *Lake Parker Mall, Inc. v. Carson,* 327 So.2d 121, 123 (Fla. 2nd DCA 1976)). In its motion for summary judgment, Total argues that Plaintiffs cannot maintain a cause of action against Total for negligence, because there is no evidentiary support in the record that Total owed a duty of care to Feraci.

"The duty element of negligence focuses on whether the defendant's conduct foresee-ably created a broader 'zone of risk' that poses a general threat of harm to others." *Whitt v. Silverman,* 788 So.2d 210, 216 (Fla.2001) (*quoting McCain v. Florida Power Corp.,* 593 So.2d 500, 502–503 (Fla. 1992)). "Foreseeability clearly is crucial in defining the scope of the general duty placed on every person to avoid negligent acts or omissions." *McCain,* 593 So.2d at 503. "Florida, like other jurisdictions, recognizes that a legal duty will arise whenever a human endeavor creates a generalized and foreseeable risk of harming others." *Id.* "Where a defendant's conduct creates a *forseeable zone of risk,* the law generally will recognize a duty placed upon defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses. *Id.* (*quoting Kaisner v. Kolb,* 543 So.2d 732, 735 (Fla.1989) (emphasis in original)). The Supreme Court of Florida has also noted that every risk need not be set out in a statute or by case law in order to give rise to a duty of care:

[E]ach defendant who creates a risk is required to exercise prudent foresight whenever others may be injured as a result. This requirement of reasonable, general foresight is the core of the duty element. For these same reasons, duty exists as a matter of law and is not a factual question for the jury to decide: Duty is the standard of conduct given to the jury for gauging the defendant's factual conduct. As a corollary, the trial and appellate courts cannot find a lack of duty if a foreseeable zone of risk more likely than not was created by the defendant.

---

**19.** In addition, there is no evidence to prove that Total acted with a reckless disregard for Feraci's safety. *See e.g., Kline v. Rubio,* 652 So.2d 964, 965 (Fla. 3rd DCA 1995) (per curiam) ("The defendant who acts in the belief or consciousness that the act is causing an appreciable risk of harm to another may be negligent, and if the risk is great the conduct may be characterized as reckless or wanton, but is not an intentional tort.") (quotations and citations omitted).

*Whitt,* 788 So.2d at 217 (*quoting McCain,* 593 So.2d at 503).

As previously noted, Total is not a co-employer of Feraci. Total is an independent contractor that is engaged in the business of marketing employee management services. In its contract with TMG, Total merely agreed to solicit client companies desiring risk management, human resources, employee benefits, and payroll management on behalf of TMG. Total in fact solicited P & S, a client company, on behalf of TMG, and TMG leased its employees to P & S to work on the project at Hurlburt Field. There is no evidence in the record to indicate that Total owed any duty to Feraci. Plaintiffs have not demonstrated that Total actually controlled anyone or anything at the project site at any point in time (especially on the day of the accident). Further, Plaintiffs have not demonstrated that Total was legally obligated in any manner to control safety at the job site. Total located P & S, a client company who was in need of employees to work on the project, and put P & S into contact with TMG. Putting the two companies in contact with each other did not create a duty for Total to protect Feraci's (or any other TMG employees') safety, and Total's actions did not create a foreseeable zone of risk. As a result, based on the evidence in the record, Total owed no duty to Feraci, and Total is entitled to summary judgment as a matter of law on all of Plaintiffs' negligence claims.[20]

Assuming *arguendo* that Total is a co-employer of Feraci, Total would be entitled to workers' compensation immunity for Plaintiffs' negligence claims for the same reasons as P & S and TMG. As to the intentional tort exception, Plaintiffs have failed to establish the requirements necessary to avoid workers' compensation immunity. As the Court has already explained in this Order, even assuming that all twenty-two alleged actions or omissions were committed by Total, they would amount to nothing more than gross negligence. Since the intentional tort exception requires Plaintiffs to demonstrate more than gross negligence, Plaintiffs would be unable to maintain an intentional tort action against Total.

### 5. *Ronnie Resmondo's Motion for Summary Judgment*

In his motion for summary judgment, Resmondo argues that, as an employee of P & S, he is immune from suit for Feraci's injuries. Resmondo was an employee of P & S who worked in a supervisory capacity at the project site. At the time of Feraci's accident, Resmondo was Feraci's supervisor. On the day of the accident, Resmondo had received orders from Grundy to move four 48–eight inch elliptical concrete pipes from one location to another. Acting in the course and scope of his employment, Resmondo delegated the job to Feraci, Melvin, and Waynick. Because Resmondo's boss, Steve Smith, had ordered the removal of the Fiat Ellis loader, which had been previously used to move the concrete pipe, Feraci, Melvin, and Waynick had to use the trac-hoe. Waynick had experience operating the trac-hoe, albeit not for the movement of the 48–inch elliptical concrete pipes, and Feraci had experience in moving similar concrete pipes as a ground

**20.** This includes any claim for negligence *per se* and gross negligence. Plaintiffs have not demonstrated to the Court that Total was in violation of any federal, state, or local law in order to establish negligence *per se.* See *deJesus v. Seaboard Coast Line Railroad Co.,* 281 So.2d 198, 201 (Fla.1973). In addition, Plaintiffs have not shown that Total owed a duty to Feraci, and without a duty, Plaintiffs cannot legally recover from Total for gross negligence. See *Faircloth v. Hill,* 85 So.2d 870, 872 (Fla.1956) (explaining that gross negligence is the absence of exercise of slight care, which is the degree of care that a reasonably prudent person owes under the circumstances).

person with the Fiat Ellis loader. In addition, Feraci had experience moving pipe of smaller size with a trachoe using the exact same procedure as was employed on the day of the accident.

 Plaintiffs argue that Resmondo's culpable negligence under the facts of this case abrogates his immunity. First, Plaintiffs claim that engaging in and allowing others to engage in drug use at the project site amounts to culpable negligence. Plaintiffs assert that Resmondo failed to have Waynick, the operator, screened for drugs immediately following the accident. They also maintain that Resmondo "committed the criminal act of falsely completing a document required by OSHA regarding site drug use." As already noted by the Court in footnote 6 of this Order, there is no evidence that either Resmondo or Waynick were under the influence of illegal drugs on the day of Feraci's accident. Thus, Resmondo is not culpably negligent for the use of drugs himself or for allowing others to use drugs on the job site.[21]

Second, Plaintiffs claim that Resmondo's failure to ensure ground communication between Waynick and the ground personnel, Feraci and Melvin, through the use of a spotter, amounts to culpable negligence. There is conflicting evidence in the record regarding whether or not a spotter was used at the time of Feraci's accident; however, construing the evidence in a light most favorable to Plaintiffs, the Court will assume Resmondo failed to check whether or not a spotter was being used before the pipe moving operation began. At most, that failure amounts to nothing more than simple negligence. It is not negligence of a gross and flagrant character which evinces a reckless disregard for the safety of others.

Third, Plaintiffs argue that Resmondo had a duty to implement a hazard analysis to determine the location of possible pinch points, *i.e.*, areas where workers could be pinched between construction equipment. Plaintiffs also maintain that Feraci was never trained how to recognize such pinch points. Plaintiffs assert that such hazard analysis was required by OSHA and that TMG was responsible for ensuring that P & S adhered to OSHA regulations. There is no evidence in the record demonstrating that Resmondo was in fact responsible for implementing a pinch point analysis and for training Feraci on how to recognize such pinch points. TMG's safety professional, Frank Ruckles, testified that, to his knowledge, the hazard analysis was performed by Grundy Marine. Plaintiffs cannot demonstrate that Resmondo had a responsibility regarding the implementation of hazard analysis and the training of Feraci on how to recognize pinch points. Thus, Plaintiffs cannot show that any negligence by Resmondo was of a gross and flagrant character so as to evince a reckless disregard for the safety of others.[22]

---

21. In addition, Plaintiffs maintain that Resmondo committed a crime by falsifying an OSHA document regarding on site drug use. Plaintiffs failed to cite any portion of the record to substantiate that contention; however, assuming *arguendo* that there were evidence in the record, the falsification of such a document did not actively injure Feraci. Assuming further that such falsification amounts to culpable negligence, the falsification could only have passively exposed Feraci to injury, which is not sufficient to abrogate immunity. *See Kennedy*, 650 So.2d at 1106 ("[T]here would be immunity for the managerial employee who passively exposed an employee to injury even if the employee's conduct otherwise could be deemed culpably negligent.")

22. There is a lack of evidence in the record to demonstrate that Resmondo (P & S, TMG, Total, or Grundy) had notice of any prior accidents as a result of the same alleged negligence. Plaintiffs do cite to deposition testimony that, in approximately the summer of 2000, Resmondo operated a trac-hoe at a different construction site and bumped either the guy or the pipe he was carrying. However, the witness did not see the alleged acci-

As a result, Resmondo was not culpably negligent, and based on the evidence in the record, no reasonable jury could conclude otherwise.[23] Accordingly, Resmondo's workers' compensation immunity is not abrogated, and he is entitled to judgment as a matter of law.[24]

Accordingly, it is hereby ordered:

1. Defendant TOTAL LEASING COMPANY, INC.'s motion for summary judgment (*see* doc. 199) is GRANTED.

2. Defendant LEDR GROUP, INC., d/b/a TMG STAFFING SERVICES, INC.'s motion for summary judgment (*see* doc. 205) is GRANTED.

3. Defendant GRUNDY MARINE CONSTRUCTION COMPANY's motion for summary judgment (*see* doc. 207) is GRANTED.

4. Defendant P & S CONSTRUCTION SERVICES, INC.'s motion for summary judgment (*see* doc. 213) is GRANTED.

5. Defendant RONNIE RESMONDO's motion for summary judgment (*see* doc. 215) is GRANTED.

6. Consistent with this order, the Clerk of Court is directed to enter final judgment as to all claims in favor of Defendants GRUNDY MARINE CONSTRUCTION COMPANY; P & S CONSTRUCTION SERVICES, INC.; TOTAL LEASING COMPANY, INC.; LEDR GROUP, INC., d/b/a TMG STAFFING SERVICES, INC.; and RONNIE RESMONDO. Plaintiffs shall take nothing by this action and go hence without day.

7. The Clerk of Court is directed to close the file in this case.

dent and only heard about it from others. (Doc. 184, Attach. Ex. E, deposition of Jimmy Nelson, p. 38, line 11 through p. 40, line 2). Even if that accident occurred, it was not one where a worker was crushed in a manner similar to Feraci.

23. Furthermore, Plaintiffs seem to contend that Resmondo was culpably negligent for failing to hold a meeting to explain to Waynick, Melvin, and Feraci how to move the concrete pipes. Feraci had experience moving smaller pipes using the same method that injured him, and Waynick had experience in the operation of a trac-hoe. Thus, assuming Resmondo had a responsibility to explain how to move the pipes despite everyone's experience, his failure amounts to nothing more than simple negligence.

24. In addition, there is no evidence that Resmondo intended to injure Feraci. Thus, Plaintiffs' intentional tort claims against Resmondo also fail as a matter of law.